OPINION
{¶ 1} Defendant, Sherwood Howard, appeals from his convictionand sentence for possessing crack cocaine in violation of R.C.2925.11(A), which were entered on Defendant's plea of no contestafter the trial court had overruled Defendant's motion tosuppress evidence.
 {¶ 2} On May 21, 2003, at about 1:50 a.m., Defendant wasobserved by two Montgomery County Sheriff's Deputies while he wasdriving a car with a permanent license plate mounted to the frontand a temporary tag mounted to the rear of the vehicle. Believingthis to be a violation of the traffic code, they activated theemergency lights on their patrol car in order to stop Defendant'svehicle.
 {¶ 3} Defendant's vehicle appeared to speed up and thenproceeded South on North Main Street, turned left on to WaverlyAvenue, and finally made a hard left turn into a driveway at ahouse. One of the two deputies, Brian Cavender, emerged from thepatrol car and approached Defendant's vehicle.
 {¶ 4} After explaining why he had stopped Defendant, DeputyCavender asked to see his driver's license. Defendant replied hedidn't have one. Defendant was then asked to get out of hisvehicle and, after being patted down, was placed in the rear seatof the deputies' patrol car while they confirmed his identity andprepared citations for his traffic code violations.
 {¶ 5} While Defendant was in the patrol car, a woman came outof the house and identified herself as the vehicle's owner. Sheasked to be allowed to enter the vehicle to secure it. DeputyCavender's partner, Deputy Phillips, told her she couldn't dothat until they'd concluded their duties.
 {¶ 6} Defendant's identity was confirmed and Deputy Cavendertold him that he would be released after citations were served.While Defendant was yet in the patrol car, Deputy Cavender askedhim if they could search inside Defendant's vehicle for weapons.Defendant consented. The woman who said she was the ownerlikewise consented.
 {¶ 7} Deputy Cavender remained with Defendant while DeputyPhillips searched Defendant's vehicle. Deputy Phillips returnedwith drugs he said he'd found inside. Defendant was arrested andcharged with possessing crack cocaine, and he was subsequentlyindicted on that charge.
 {¶ 8} Defendant moved to suppress evidence of the drugs seizedfrom his vehicle. At the hearing on the motion, the State offeredthe testimony of Deputy Cavender concerning Defendant's stop andarrest. Deputy Phillips, who discovered and seized the drugs,didn't testify.
 {¶ 9} Deputy Cavender testified on direct examination thatDeputy Phillips asked Defendant "if he'd mind if he checked thecar for weapons, and . . . Mr. Sherwood said that was fine withhim, he could." (T. 12). Deputy Cavender testified that the womanwho said she owned the vehicle also gave her consent. Id.With respect to why the request was made, Deputy Cavendertestified as follows:
 {¶ 10} "Q. Okay. Up until this point was there anything thatMr. Howard said or did to lead you to believe he was armed?
 {¶ 11} "A. Just the way he was driving right there to, youknow, that left hard turn into that driveway, you know, like hewas trying to avoid me.
 {¶ 12} "Q. And you thought because of that he was armed.
 {¶ 13} "A. Maybe not necessarily armed, but I believed thatthere was — he had something he didn't want us to see.
 {¶ 14} "Q. Something he didn't want us to see like what?
 {¶ 15} "A. Drugs, guns, I don't know.
 {¶ 16} "Q. Did you see him make any type of furtive movementswhile he was driving?
 {¶ 17} "A. No.
 {¶ 18} "Q. See him reach under the seat?
 {¶ 19} "A. No.
 {¶ 20} "Q. Reach anywhere else?
 {¶ 21} "A. No.
 {¶ 22} "Q. He just drove fast and turned into a driveway.
 {¶ 23} "A. Yes. (T. pp. 20-21).
 {¶ 24} Deputy Cavender later testified: "I'm not going to bereleasing anybody back to their vehicle if I think there's a —might be a weapon or something in there." (T. 27-28), When askedwhy he suspected Defendant might have a weapon, he conceded thathis sole basis for that was that Defendant had pulled his carinto the driveway quickly when the deputies stopped him. Id.
 {¶ 25} Deputy Cavender conceded that he had no directknowledge concerning where in the vehicle Deputy Phillips foundthe drugs he seized, and that the only information he had waswhat Deputy Phillips told him. (T. 23). He testified that DeputyPhillips said he'd "found them, I believe, somewhere around thedriver's seat . . . I can't remember exactly where he said." (T.23). Deputy Cavender acknowledged that he was unaware whether thedrugs were contained or packaged, or if they were, whether theappearance of the container or package suggested that a weaponmight be inside. Id.
 {¶ 26} The trial court denied Defendant's motions to suppress.He filed a timely notice of appeal after he was convicted andsentenced on his change of plea. Defendant presents fourassignments of error for review. All concern his arrest.
 {¶ 27} FIRST ASSIGNMENT OF ERROR
 {¶ 28} "The trial court erred in overrulingdefendant-appellant's motion to suppress evidence where the statefails to meet its burden of proof that the search of the car wasconducted within the scope of the alleged consent granted afterdefendant-appellant raised this issue in his pretrial motion tosuppress and at the hearing, and the state fails to present anytestimony or evidence to address the issue or introduce thetestimony of the officer who conducted the search."
 {¶ 29} The Fourth Amendment protects against unreasonablesearches and seizures. Warrantless searches are per seunreasonable, and therefore illegal, unless the statesuccessfully demonstrates one or more of the several recognizedexceptions to the Fourth Amendment warrant requirement. Katz v.United States (1967), 389 U.S. 347, 88 S.Ct. 507,19 L.Ed.2d 576.
 {¶ 30} Traffic stops are seizures for purposes of the FourthAmendment, even when a resulting detention is temporary andnon-custodial, lasting only until a citation is served and themotorist is free to leave. In the interest of protecting thesafety of officers, the driver and passengers may be ordered outof the vehicle while the citation is being prepared.Pennsylvania v. Mimms (1997), 434 U.S. 106, 98 S.Ct. 330,54 L.Ed.2d 331. Also, if there is a legitimate reason for theofficer to require those persons to sit in the police vehiclewhile the citations are being prepared, a weapons pat-down inthat connection is permissible for related reasons of officersafety. State v. Evans (1993), 67 Ohio St.3d 405; State v.Lozada, 92 S.Ct. 3d 74, 2001-Ohio-149. However any other reasonto perform the pat down must satisfy the requirements of Terryv. Ohio (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed. 2d 889.
 {¶ 31} Terry holds that searches of detainees forsuspected contraband are prohibited, but a cursory search of adetainee's outer clothing for weapons is permitted if the officerpossesses, and the facts and circumstances portray, a reasonableand articulable suspicion that the person is armed and may be adanger to the officer or others around them. A like standardapplies to the officer's search of a detained driver's motorvehicle before he is allowed to return to it, whether or not thedriver was patted down. The officer may search the vehicle iffacts and circumstances develop which give rise to a reasonableand articulable suspicion that the motorist is a danger to theofficer and may gain access to a weapon inside the vehicle whenallowed to return to it. Michigan v. Long (1983),463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201; State v. Erwin (July22, 1994), Montgomery App. No. 14135; State v. Henderson(Nov. 7, 1997), Montgomery App. No. 16016.
 {¶ 32} The State, relying on Michigan v. Long argues that,irrespective of the consent they procured from Defendant and thewoman who said she owned the vehicle, the deputies wereauthorized to perform the search of its interior that yielded thedrugs. We do not agree.
 {¶ 33} Defendant was stopped for a license tag violation.Nothing about the conduct that offense involves implies aparticular risk to the deputies, much less a reasonable suspicionthat Defendant might be armed and dangerous or have a weaponinside his vehicle. Deputy Cavender's equivocal assertion thatthe way in which Defendant pulled his vehicle into the drivewayraised that concern in his mind portrays no reasonable basis forthe required suspicion. More likely, the deputy acted out of thegeneral concern he expressed: that allowing persons to return totheir vehicle poses an inherent risk when they have a gun orother weapon inside. Prudent as that concern is, it does notoperate to create reasonable suspicion that the person has a gunor other weapon in the vehicle.
 {¶ 34} The State also argues that the search was justified bythe pat down, or was in some way a reasonable extension of it.That is mere bootstrapping. The justification for the pat down isthe risk of danger to which an officer is exposed when a detaineeis seated behind him in his cruiser. State v. Evans; State v.Lozada. That particular danger ceases when the detainee isreleased. The issue then, in a situation of this kind, is whethera reasonable and articulable suspicion exists that the vehiclecontains a weapon. On this record, that is not shown.
 {¶ 35} The remaining basis for the search that yielded thedrugs, and the one on which the State might logically rely, flowsfrom the consent Defendant gave.
 {¶ 36} Consent is not an exception to the warrant requirement,but is instead a decision by a citizen to waive his FourthAmendment rights. At issue when consent is asserted are: (1) thevoluntariness of the consent that was given, (2) whether theindividual consenting may place limitations on the search, and(3) who is authorized to consent. Katz, Ohio Arrest, Search andSeizure, Section 18.1.
 {¶ 37} It is undisputed that Defendant was authorized toconsent to a search of his vehicle. Defendant's detention had notconcluded when his consent was asked and given, and sovoluntariness is not an issue. State v. Retherford (1999),93 Ohio St.3d 586. The only issue is whether the scope of the searchwas beyond the consent Defendant gave to search the interior ofhis vehicle for weapons, which is his claim.
 {¶ 38} The scope of a search that rests on consent is limitedto the extent of that consent. A person consenting can set limitson the time, duration, area and intensity of the search, as wellas the conditions governing the search. State v. Perry(1985), Jackson App. Nos. 479, 480. An intrusion beyond thoselimitations would not be based on an intentional relinquishmentof the right. However, a defendant's general consent to searchhis car has been held to include a consent to search closedcontainers found inside, Florida v. Gagman (1991),500 U.S. 248, 111 S.Ct. 1801, 114 L.Ed.2d 297, as well as underneath thefront seat and into all compartments. State v. Patterson(1993), 95 Ohio App.3d 255.
 {¶ 39} Defendant argues, as he did in the trial court, thatthe consent he gave was limited to a search for weapons, and thatDeputy Phillips exceeded the limits of that consent when heseized the drugs that he found. That is disingenuous, at least tothe extent that it suggests that the waiver of rights involvedwould prevent officers from seizing contraband discovered in thecourse of the resulting search. Law enforcement officers have theinherent authority to seize contraband they find in "plain view"so long as two conditions are satisfied. The intrusion affordingthe plain view must be lawful. State v. Robinson (1995),103 Ohio App.3d 490. And, the incriminating nature of the evidencemust be immediately apparent to the seizing authority. Coolidgev. New Hampshire (1971), 403 U.S. 443, 91 S.Ct. 2022,29 L.Ed.2d 564.
 {¶ 40} Here, the consent Defendant gave to search his vehiclefor weapons made Deputy Phillips' intrusion lawful. He reportedthat the drugs were "found around the driver's seat," whichindicates where they were discovered. What the evidence whollyfails to portray, however, is that the incriminating nature ofthe drugs as contraband was immediately apparent to DeputyPhillips when he saw it.
 {¶ 41} Unlike a gun or a knife, the fact that an article iscontraband isn't necessarily revealed by its appearance. Here,the contraband was crack cocaine, which does have a distinctiveappearance. However, we do not know how the contraband appearedto Deputy Phillips when he saw it, whether it was unwrapped,which is unlikely, or instead was concealed inside a wrapping orcontainer, and, if it was, whether the particular appearance ofthe container or wrapping suggested that a weapon or contrabandmight be inside. Those facts could have been explored had DeputyPhillips testified, but he didn't. And, Deputy Cavender, who didtestify, had no direct knowledge or even an understanding derivedfrom what Deputy Phillips had told him that might explain thosematters and resolve the issues they present.
 {¶ 42} It is, as we said, the State's burden to present orpoint to evidence portraying the exception to the warrantrequirement that justifies both a search and the seizure that wasa product of it. Here, there is no evidence that justifies theseizure, notwithstanding the apparent validity of the search thatderives from the consent Defendant gave. Therefore, the trialcourt erred when it denied Defendant's motion to suppressevidence.
 {¶ 43} The first assignment of error is sustained. Thatholding renders the remaining assignments of error moot.Therefore, we need not decide them. App.R. 12(A)(1)(c).
 {¶ 44} Having sustained the first assignment of error, we willreverse and vacate the judgment from which the appeal was takenand remand the case for further proceedings consistent with thisopinion.
 Fain, P.J. and Wolff, J., concur.