DECISION AND JUDGMENT ENTRY
{¶ 1} Travis Jones appeals the trial court's denial of his motion to suppress the cocaine found in two containers on his person following a vehicle stop. Jones contends that the officer unreasonably detained the vehicle and its occupants beyond the scope and duration necessary for the initial stop in order to conduct a canine check on the outside of the vehicle. We reject that contention because the canine check occurred during the time necessary to effectuate the original purpose of the stop, i.e., the officer was still awaiting the results of the license plate and warrant checks.
 {¶ 2} Jones also argues that the arresting officer had no basis for conducting a pat down search of his person since he did not have a reasonable suspicion that Jones possessed a weapon. However, we conclude that the officer was justified in conducting a Terry frisk for his own safety because the officer observed Jones making "furtive" movements while he was following the vehicle, a canine check had revealed that drugs were in the vehicle, and guns often accompany illegal drugs.
 {¶ 3} Finally, Jones contends that even if the pat down was appropriate, the officer could not open the containers discovered during the search because it was unreasonable to believe the containers held weapons. Because the small size of containers refuted the claim that they could have contained weapons, we agree.
 {¶ 4} Nonetheless, we affirm the trial court's denial of the motion to suppress. The officer had probable cause to believe that Jones had illegal drugs on his person given his past involvement with drugs, the canine's positive reaction to the vehicle while Jones was seated in it, Jones' attempts to prevent a complete pat down search of his person, and the officer's discovery of the containers between Jones' buttocks and in his underwear. We conclude that probable cause combined with exigent circumstances justified the warrantless search since Jones could have destroyed any evidence of his crime if the officer allowed him to leave pending the obtainment of a warrant. Accordingly, we affirm the trial court's denial of the motion to suppress.
 {¶ 5} The factual context for this appeal is based upon a hearing on appellant's motion. While on routine patrol shortly after 1:00 in the morning, Officer Scott Smeeks of the Belpre Police Department observed a vehicle traveling towards him at a slow rate of speed. Officer Smeeks turned his cruiser around and began following the vehicle. He saw the car "jerking" back and forth in its lane and, based on the slow speed of the vehicle and the jerking, he suspected that the driver was intoxicated. Officer Smeeks also "noticed that the back seat passenger was making quite a bit of movements * * *."
 {¶ 6} Officer Smeeks radioed the dispatcher to check the vehicle's license plate; however, before the dispatcher responded to the request, Officer Smeeks observed an expired registration sticker. Because the vehicle was heading towards a bridge to West Virginia, Officer Smeeks decided to stop the vehicle before receiving the dispatcher's response.
 {¶ 7} Officer Smeeks approached the vehicle and asked the driver and both passengers for identification. Jones did not have any identification, but the driver and front seat passenger produced their identification. The driver also gave Officer Smeeks the vehicle registration, which was expired.
 {¶ 8} Officer Smeeks asked the driver to exit the vehicle and escorted the driver to the police cruiser. Officer Smeeks testified that he did not smell any alcohol on the driver and the driver did not have any coordination problems, but he "was pretty sure [he] could smell the odor of burnt marijuana in the vehicle."
 {¶ 9} Officer Smeeks testified that he asked the driver for Jones' identity and recognized Jones once he learned his name. Previously, some burglars had broken into Jones' home because they believed he possessed the drug "ecstasy." Also, Officer Smeeks, a canine control officer, had previously been summoned to conduct a canine search of Jones' car during which he discovered marijuana.
 {¶ 10} Officer Smeeks decided to walk his dog around the vehicle and called for Patrolman Combs to assist. When Officer Smeeks requested assistance, he had not yet heard from the dispatcher regarding the vehicle's license plate check. He was also awaiting the warrant checks for both the driver and the front seat passenger. Both Officer Smeeks and Patrolman Combs testified that Combs arrived approximately two minutes after he was contacted.
 {¶ 11} Officer Smeeks removed the canine from the patrol car and conducted a canine check of the outside of the vehicle. The dog "hit" on the backseat passenger door. Therefore, Officer Smeeks decided to manually search the vehicle. Officer Smeeks instructed both passengers to place their hands in front of them. Because in his experience guns often accompany drugs and because Jones was moving around prior to the stop, Officer Smeeks decided to frisk the passengers.
 {¶ 12} After conducting a pat down search of the front seat passenger, Officer Smeeks asked Jones to step out of the car, turn around, and place his hands on the hood. Since Officer Smeeks knew Jones, they conversed during the search. Officer Smeeks testified that Jones repeatedly looked back at him and failed to keep his hands on the hood of the car. As Officer Smeeks began searching Jones' waist area, Jones turned around and tried to talk to Officer Smeeks. Officer Smeeks suspected that Jones was either going to try to grab a weapon or to run. After Officer Smeeks repeatedly instructed Jones to keep his hands in place, Patrolman Combs assisted Officer Smeeks in handcuffing Jones.
 {¶ 13} As Officer Smeeks continued patting Jones down, he felt "something protruding out of [Jones'] butt." Officer Smeeks testified that he tried to "grab hold of it and pull" to see if he could identify the object, and it fell on the ground. Officer Smeeks discovered it was a blue, round Blistex ointment container. Officer Smeeks continued the search and felt a hard object in Jones' pants. After Jones denied he had anything in his pants, Officer Smeeks undid Jones' pants and removed a Tylenol container from his underwear. The container was approximately three inches long and a half inch wide. Officer Smeeks opened both containers and discovered a white, powdery substance with chunks in it, which he believed was cocaine or methadone. In response to an inquiry by Patrolman Combs, Jones admitted that the substance was cocaine. Officer Smeeks later found a razor with residue on it in the back seat where Jones was sitting.
 {¶ 14} Officer Smeeks acknowledged that LEADS revealed that the vehicle's registration was not actually expired; however, he did not discover this information until he returned to the police station.
 {¶ 15} Adam Berardi, the front seat passenger, refuted Officer Smeeks' version of the events. Berardi testified that he was still in the vehicle when Officer Smeeks searched Jones, that Jones did not struggle, and that Officer Smeeks patted Jones' pants for at least sixty seconds. Berardi also testified that he did not see anything fall out of Jones' pants.
 {¶ 16} The Washington County Grand Jury indicted Jones on one count of possession of drugs, a felony of the fourth degree, and Jones pled not guilty. Defense counsel filed a motion to suppress evidence and statements. After the hearing noted above, the trial court denied the motion as to the physical evidence but granted the motion as to the statements. Jones changed his plea to no contest and the trial court sentenced Jones to a five year community control sanction.
 {¶ 17} Jones filed a timely appeal, assigning the following error: "The trial court committed reversible error when it failed to suppress the evidence obtained by the police as a result of an illegal seizure and search, in violation of the Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution."
 {¶ 18} In a motion to suppress, the trial court assumes the role of trier of fact and, accordingly, is in the best position to resolve questions of fact and evaluate witness credibility. See, e.g., State v. Mills (1992), 62 Ohio St.3d 357, 366,582 N.E.2d 972, citing State v. Fanning (1982), 1 Ohio St.3d 19,20, 437 N.E.2d 583; see, also, State v. Williams (1993),86 Ohio App.3d 37, 41, 619 N.E.2d 1141. Thus, we are bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. State v. Guysinger (1993),86 Ohio App.3d 592, 594, 621 N.E.2d 726. Accepting those facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard. Ornelas v. United States (1996),517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911; State v. Klein
(1991), 73 Ohio App.3d 486, 488, 597 N.E.2d 1141; Williams;Guysinger.
 {¶ 19} The Fourth Amendment to the United States Constitution protects individuals against unreasonable governmental searches and seizures. See, e.g., United States v. Arvizu (2002),534 U.S. 266, 122 S.Ct. 744, 750, 151 L.Ed.2d 740; Terry v. Ohio
(1968), 392 U.S. 1, 9, 88 S.Ct. 1868, 20 L.Ed.2d 889. "Searches conducted outside the judicial process, without prior approval by a judge or magistrate, are per se unreasonable under theFourth Amendment — subject only to a few specifically established and well-delineated exceptions." Katz v. United States (1967),389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576. Once the defendant demonstrates that he was subjected to a warrantless search or seizure, the burden shifts to the State to establish that the warrantless search or seizure was constitutionally permissible. See Maumee v. Weisner, 87 Ohio St.3d 295, 297, 1999-Ohio-68,720 N.E.2d 507; Xenia v. Wallace (1988), 37 Ohio St.3d 216,524 N.E.2d 889, paragraph two of the syllabus.
 {¶ 20} A traffic stop initiated by a law enforcement officer implicates the Fourth Amendment. See Whren v. United States
(1996), 517 U.S. 806, 809, 116 S.Ct. 1769, 135 L.Ed.2d 89. Such a traffic stop must comply with the Fourth Amendment's general reasonableness requirement. In Whren, the Supreme Court recognized that the Fourth Amendment's reasonableness requirement is fulfilled and a law enforcement officer may constitutionally stop the driver of a vehicle when the officer possesses probable cause to believe that the driver of the vehicle has committed a traffic violation. The court stated: "Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a seizure of `persons' within the meaning of [theFourth Amendment]. * * * An automobile stop is thus subject to the constitutional imperative that it not be `unreasonable' under the circumstances. As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred. * * *" Id. at 809-810 (citations omitted); see, also, Dayton v. Erickson,76 Ohio St.3d 3, 11-12, 1996-Ohio-431, 665 N.E.2d 1091, 1097-98.
 {¶ 21} Jones does not dispute the lawfulness of Officer Smeeks' stop of the vehicle based on the expired registration and his concern that the driver was intoxicated. Rather, Jones argues that the scope and duration of the stop lasted longer than necessary to effectuate the original purpose of the stop. Jones argues that since Officer Smeeks obtained sufficient information to issue a citation and testified that the driver did not appear impaired, he should have simply written the driver a ticket and allowed the vehicle to leave.
 {¶ 22} The scope and duration of a routine traffic stop "must be carefully tailored to its underlying justification * * * and last no longer than is necessary to effectuate the purpose of the stop." Florida v. Royer (1983), 460 U.S. 491, 500,103 S.Ct. 1319, 75 L.Ed.2d 229; see, also, State v. Gonyou (1995),108 Ohio App.3d 369, 372, 670 N.E.2d 1040. The rule set forth inRoyer is designed to prevent law enforcement officers from conducting "fishing expeditions" for evidence of a crime.Gonyou; Sagamore Hills v. Eller (Nov. 5, 1997), Summit App. No. 18495; see, also, Fairborn v. Orrick (1988),49 Ohio App.3d 94,95,550 N.E.2d 488,490 (stating that "the mere fact that a police officer has an articulable and reasonable suspicion sufficient to stop a motor vehicle does not give that police officer `open season' to investigate matters not reasonably within the scope of his suspicion").
 {¶ 23} "When a law enforcement officer stops a vehicle for a traffic violation, the officer may detain the motorist for a period of time sufficient to issue the motorist a citation and to perform routine procedures such as a computer check on the motorist's driver's license, registration, and vehicle plates."State v. Aguirre, Gallia App. No. 03CA5, 2003-Ohio-4909, at ¶ 36, citing State v. Carlson (1995), 102 Ohio App.3d 585, 598,647 N.E.2d 591. "In determining if an officer completed these tasks within a reasonable length of time, the court must evaluate the duration of the stop in light of the totality of the circumstances and consider whether the officer diligently conducted the investigation." Id., citing State v. Cook (1992),65 Ohio St.3d 516, 521-522, 605 N.E.2d 70 (fifteen minute detention was reasonable); United States v. Sharpe (1985),470 U.S. 675, 105 S.Ct. 1568, 84 L.Ed.2d 605 (twenty minute detention was reasonable).
 {¶ 24} A lawfully detained vehicle may be subjected to a canine check of the vehicle's exterior even without the presence of a reasonable suspicion of drug-related activity. State v.Rusnak (1997), 120 Ohio App.3d 24, 28, 696 N.E.2d 633. Both Ohio courts and the United States Supreme Court have determined that "the exterior sniff by a trained narcotics dog to detect the odor of drugs is not a search within the meaning of theFourth Amendment to the Constitution." Id.; United States v. Place
(1983), 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110. Thus, a canine check of a vehicle may be conducted during the time period necessary to effectuate the original purpose of the stop.
 {¶ 25} It is undisputed that only approximately two minutes elapsed between Officer Smeeks' request for back up and the arrival of Patrolman Combs. Moreover, Officer Smeeks had not yet completed the purpose of the stop when he conducted the canine check. He was still awaiting information from the dispatcher and had not yet issued a ticket to the driver for the expired registration. Therefore, we conclude that Officer Smeeks did not unlawfully expand the scope of the stop. In other words, the detention of the vehicle was reasonable.
 {¶ 26} Jones also argues that Officer Smeeks was not justified in frisking him for weapons and, even if a frisk was justified, Officer Smeeks exceeded the permissible scope of a weapons frisk when he removed and opened the containers.
 {¶ 27} Under the rule set forth in Terry, a law enforcement officer may stop an individual if the officer possesses a reasonable suspicion, based upon specific and articulable facts, that criminal behavior has occurred or is imminent. Terry,392 U.S. at 21; State v. Andrews (1991), 57 Ohio St.3d 86,565 N.E.2d 1271; State v. Venham (1994), 96 Ohio App.3d 649, 654,645 N.E.2d 831. To justify an investigative stop, the officer must be able to articulate specific facts which would warrant a person of reasonable caution in the belief that the person stopped has committed or is committing a crime. Whren; Terry.
 {¶ 28} Once an officer has lawfully detained an individual pursuant to Terry, the officer may frisk the suspect if the officer has reasonable grounds to believe the suspect is armed.Terry at 25-26. However, the officer "may search only for weapons when conducting a pat down of the suspect." State v.Evans, 67 Ohio St.3d 405, 414, 1993-Ohio-186, 618 N.E.2d 162. The scope of a Terry search is: "a narrowly drawn authority to permit a reasonable search for weapons for the protection of a police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime."Terry, 392 U.S. at 27.
 {¶ 29} The purpose of a Terry "`search is not to discover evidence of a crime, but to allow the officer to pursue his investigation without fear of violence.'" Evans,67 Ohio St.3d at 408, 618 N.E.2d 162, quoting Adams v. Williams (1972),407 U.S. 143, 146, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612. A Terry
pat-down search is limited in scope to discovering weapons that might be used to harm the officer "and cannot be employed by the searching officer to search for evidence of a crime." Evans,67 Ohio St.3d at 414, 618 N.E.2d 162. Thus, a Terry search must "be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer." Terry, 392 U.S. at 29.
 {¶ 30} Although Terry limits the scope of the search to weapons, the discovery of other contraband during a Terry
search will not necessarily preclude its admissibility. InMinnesota v. Dickerson (1993), 508 U.S. 366, 113 S.Ct. 2130,124 L.Ed.2d 334, the United States Supreme Court adopted the "plain feel" doctrine as an extension of the "plain view" doctrine. The Supreme Court stated: "If a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain view context." Id. at 375-376.
 {¶ 31} Once the canine alerted to drugs in the vehicle, Officer Smeeks had reasonable suspicion to briefly detain Jones to further investigate whether he had engaged in criminal behavior. Officer Smeeks testified that he conducted a pat down of Jones because he saw Jones making excessive movements prior to the stop, the dog alerted to drugs in the vehicle, and drugs are often accompanied by guns. Officer Smeeks also testified that he feared for his own safety, especially since he was previously knocked unconscious by a suspect.
 {¶ 32} We agree with Jones that there is some evidence to refute Officer Smeeks' claim that he had a reasonable suspicion that Jones was armed. Although Officer Smeeks had prior involvement with Jones, neither of those incidents involved a weapon. Moreover, although Officer Smeeks testified that he observed Jones making quite a bit of movement, he did not describe the nature of those movements or why they led him to believe that Jones possessed a weapon. See State v. Gaus, Ross App. No. 00CA2546, 2001-Ohio-2418, citing Katz, Ohio Arrest, Search and Seizure (1998 Ed.) 261, § T14.03(B) (claims of furtive movement must be carefully examined by the courts).
 {¶ 33} Nonetheless, we realize that police officers face an inordinate risk when they approach an automobile during a traffic stop. State v. Williams (1994), 94 Ohio App.3d 538,641 N.E.2d 239. Moreover, Ohio courts have long recognized that persons who engage in illegal drug activities are often armed with a weapon. See Evans, at 413 and State v. Martin, Montgomery App. No. 20270, 2004-Ohio-2738. Since Officer Smeeks had probable cause to believe that the vehicle contained drugs based on the canine alert [see State v. Bolden, Preble App. No. CA2003-03-007, 2004-Ohio-184], he observed Jones making movements in the back seat, and he knew Jones had a history of drug possession, the trial court's finding that Officer Smeeks was justified in frisking Jones for weapons is supported by competent, credible evidence.
 {¶ 34} However, we conclude that the officers were not justified under Terry in opening the containers discovered during the frisk. Although Terry does not require that an officer be absolutely convinced that an object he feels is a weapon before grounds exist to remove the object from the suspect, a hunch or inarticulable suspicion that an object is a weapon is not a sufficient basis to uphold a further intrusion into a suspect's clothing. State v. Harrington (June 1, 1994), Montgomery App. No. 14146. "When an officer removes an object that is not a weapon, the proper question to ask is whether that officer reasonably believed, due to the object's `size or density,' that it could be a weapon." Id., citing 3 LaFave, Search and Seizure (2 Ed. 1987) 521, Section 9.4(c).
 {¶ 35} If an officer is unable to determine during a patdown whether an object is a weapon, the officer may remove the object in order to examine the object visually. Minnesota v.Dickerson, supra, at 2136. Once the officer has visually examined the object and concluded that it is not a weapon, does not contain a weapon, and is not obviously contraband, the officer's justification for conducting a limited frisk for weapons is dissipated. State v. Chatton (1984),11 Ohio St.3d 59, 63, 463 N.E.2d 1237, 1240-1241, certiorari denied (1984),469 U.S. 856, 105 S.Ct. 182, 83 L.Ed.2d 116. If the officer lacks "probable cause to believe that an object in plain view is contraband without conducting some further search of the object — i.e., if `its incriminating character [is not] "immediately apparent,"' [Horton v. California (1990), 496 U.S. 128, 137,110 S.Ct. 2301, 2308, 110 L.Ed.2d 112, 123] — the plain-view doctrine cannot justify its seizure. [Arizona v. Hicks (1987),480 U.S. 321, 107 S.Ct. 1149, 94 L.Ed.2d 347]." State v. Evans
(1993), 67 Ohio St.3d 405, 423, 618 N.E.2d 162, 176 (Wright, J., dissenting).
 {¶ 36} Officer Smeeks testified that the Blistex and Tylenol containers felt like weapons because they were hard. He stated that he believed the containers could have held weapons because "anything can be a weapon" and the Blistex container could have contained gun powder with a fuse or a knife. The mere possibility that a razor blade or other small weapon could have been in the containers is an insufficient basis to search. See Evans,
supra. Although the removal of the objects from Jones' pants may have been justified, given their small size it is unreasonable that a weapon could have been housed in either container. Moreover, since the containers were not obviously contraband, they could not be opened under the plain view doctrine.
 {¶ 37} Nonetheless, we conclude that the trial court properly denied Jones' motion to suppress the evidence. In State v.Moore, 90 Ohio St.3d 47, 2000-Ohio-10, 734 N.E.2d 804, the Ohio Supreme Court held that the officer's warrantless search of a stopped motorist's person was justified based on the officer's smell of marijuana emanating from the vehicle and the motorist.90 Ohio St.3d at 51-52. The officer acknowledged that he was not conducting a pat down search or in fear of his safety and was searching only because he smelled marijuana. Id.
 {¶ 38} The Supreme Court recognized that there must generally be "compelling reasons" or "exceptional circumstances" justifying an intrusion without a warrant. Id. at 52, citing McDonald v.United States (1948), 335 U.S. 451, 454, 69 S.Ct. 191, 193,93 L.Ed. 153, 158. However, the Court concluded that the warrantless search of the defendant's person in Moore was justified because the officer had both probable cause to believe the defendant committed a crime and there were exigent circumstances given the imminent danger that evidence of the crime would be lost or destroyed if the officer did not immediately search the defendant. Id. The Court noted that, in order to obtain a warrant to search the defendant for possible narcotics, the officer would have had to permit the defendant to leave the scene in his vehicle. Id. Thus, the dissipation of the marijuana odor and the possible loss or destruction of evidence were compelling reasons for the officer to be able to conduct a warrantless search of the defendant's person. Id.
 {¶ 39} The State argues that Officer Smeeks likewise had probable cause to believe that Jones had committed a drug crime and there were compelling reasons justifying the warrantless search. Jones argues that the State's reliance on Moore is misplaced since, unlike the officer in that case, Officer Smeeks never testified that he was trained in smelling marijuana, that he smelled the odor of "fresh" marijuana, or that he smelled the odor on Jones' person.
 {¶ 40} "Probable cause" is defined as a reasonable ground of suspicion that is supported by facts and circumstances, which are sufficiently strong to warrant a prudent person in believing that an accused person had committed or was committing an offense.State v. Ratcliff (1994), 95 Ohio App.3d 199, 205,642 N.E.2d 31, citing Beck v. Ohio (1964), 379 U.S. 89, 91, 85 S.Ct. 223,13 L.Ed.2d 142 and State v. Rose (1991), 75 Ohio App.3d 656,659, 600 N.E.2d 392. The definition of "probable cause" has been interpreted by Ohio courts to include the totality of facts and circumstances within a police officer's knowledge. State v.Steen, Summit App. No. 21871, 2004-Ohio-2369.
 {¶ 41} While Jones' arguments regarding the differences between the facts in his case and those in Moore are technically correct, there are several factors present here that did not exist in Moore: (1) Officer Smeeks observed Jones making a lot of movements in the backseat of the vehicle; (2) Officer Smeeks knew that Jones had a history of drug possession; (3) the canine alert indicated that drugs were present in the vehicle while Jones was seated in it; (4) Jones attempted to prevent Officer Smeeks from discovering the containers by repeatedly hindering the pat down search; and (5) during the pat down search Officer Smeeks found containers that could have held drugs in unusual places, i.e. in his "butt" and in his underwear. While this is a "close call" and the absence of even one of these factors may have led us to a different result, we find that Officer Smeeks had probable cause to believe that Jones possessed illegal drugs based on the totality of the circumstances.
 {¶ 42} Under the Supreme Court's analysis in Moore, we also conclude that there were exigent circumstances justifying the warrantless search of Jones' person. Narcotics in an individual's possession are easily destroyed and Officer Smeeks would have had to allow Jones to leave the scene or detained him for an unreasonable length of time in order to obtain a warrant to search his person at 1:00 in the morning. Therefore, we conclude that the search of Jones' person was supported by probable cause and exigent circumstances.
 {¶ 43} We recognize that our reasons for upholding the denial of the suppression motion differ from the trial court's in that the trial court concluded that "the opening of those containers, without a warrant, was lawful given the fact that the dog had alerted in that area of the vehicle wherein the defendant was seated." Significantly, the State offered no evidence that the dog's alert to the rear door of the vehicle indicates that drugs were in the rear of the vehicle as opposed to another area of the car. Although the dog's positive reaction to the vehicle while Jones was seated in it was clearly relevant, this factor alone is insufficient to constitute probable cause to search Jones' person. However, the Supreme Court has consistently held that a reviewing court is not authorized to reverse a correct judgment simply because the trial court stated an erroneous basis for that judgment. Myers v. Garson, 66 Ohio St.3d 610, 614, 1993-Ohio-9,614 N.E.2d 742; Joyce v. General Motors Corp. (1990),49 Ohio St.3d 93, 96, 551 N.E.2d 172. Therefore, we affirm the trial court's judgment on other grounds.
 {¶ 44} We conclude that Officer Smeeks' search of Jones' person was permissible since he had reasonable suspicion to believe Jones possessed a weapon. Further, he was justified in opening the containers found during the search because he had probable cause to believe the containers contained illegal drugs and exigent circumstances were present. Jones' sole assignment of error is overruled.
Judgment affirmed.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that the Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Washington County Common Pleas Court to carry this judgment into execution.
IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Ohio Supreme Court an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Ohio Supreme Court in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Kline, P.J. Abele, J.: Concur in Judgment and Opinion.