**The STATE of Ohio,**

v.

**SUTER.**

2005-Ohio-3461.]

Court of Common Pleas of Ohio,
Clermont County.

No. 2004 CR 000862.

Decided March 15, 2005.

8

Jason Nagel, Assistant Clermont County Prosecuting Attorney, for plaintiff.

W. Kenneth Zuk, for defendant.

RINGLAND, Judge.

{¶ 1} This matter came on for hearing on January 28, 2005, pursuant to a motion to suppress filed by the defendant, Amanda R. Suter, on January 6, 2005. Following the hearing, the parties filed supporting memoranda. Having considered the evidence adduced at the hearing, the arguments of the parties made at the hearing and in their memoranda, and the relevant law, the court hereby renders a decision as follows.

Facts

{¶ 2} This case arises from a traffic stop that occurred on November 1, 2004. At approximately 2:54 a.m., Officer Shane Bininger, of the Bethel Police Department, received a call reporting an attempted break-in at the home of Michelle Brandenburg. While responding to that call, Officer Bininger saw a green Chevrolet Cavalier a few blocks away from Brandenburg's residence. Officer Bininger contacted Brandenburg, and she reported that she had seen a green vehicle leaving the area and that the attempted break-in of her home had ceased. At approximately 3:30 a.m., Officer Bininger stopped the green Cavalier to investigate.

{¶ 3} Officer Bininger testified that there were four persons in the vehicle at the time of the stop and that Amanda Suter was the driver. He further testified that his suspicions were aroused because the three passengers in the vehicle seemed nervous. Mark Winton, the passenger in the front seat, who was known to Officer Bininger as a drug dealer, would not make eye contact with Officer Bininger. He removed Suter from the vehicle to question her about her possible involvement in the attempted break-in and also obtained her consent to search the vehicle.

{¶ 4} With regard to the vehicle search, Officer Bininger testified, "I asked for a consent to search the vehicle. * * * I asked her for permission to search the vehicle based on any criminal activity that may have occurred over at Michelle Brandenburg's house or any other residence in the area. * * * I asked her if I could have permission to search her vehicle, take a look for any guns, knives, hand grenades, rocket launchers or anything that might be used in any type of criminal activity." Officer Bininger did not seek consent to search the persons of any of the persons in the car. Finding no evidence of criminal activity, Officer Bininger concluded that Suter was not involved in the attempted break-in. He summoned Suter, who was seated on the curb several feet away from the vehicle, in order to return her driver's license, and he had intended to allow Suter to go on her way. As she got up from the curb, however, a small, metal container, approximately four inches by one inch, fell from Suter's pant leg onto the ground.

{¶ 5} Officer Bininger retrieved the container and opened it, finding what was later determined to be cocaine, methadone, and oxycodone. Under cross-examination, Officer Bininger stated that he could not recall whether Suter specifically consented to his opening the container. He admitted that he had never determined who, if anyone, had attempted to enter Brandenburg's home and that he had observed no violations of law prior to opening the container. He testified under redirect examination that in his experience as a police officer, which includes advanced training in drug policing, the type of container at issue is commonly used to transport drugs and is sold for just that purpose. He also

stated that it was his belief that Suter's original consent to search the vehicle included her consent to search the container, saying, "[The container] was part of the vehicle. It was part of her. It was part of the consent." However, Officer Bininger did not pat Suter down until after he placed her under arrest for the possession charge.

{¶ 6} After placing Suter under arrest, Officer Bininger read Suter her *Miranda* rights. He questioned her about the substances in the container, and she admitted that they were drugs. He also determined that the container had fallen out of Suter's underwear. Upon further inquiry, Suter also admitted to having consumed cocaine and pills earlier in the day. Officer Bininger also searched Suter's purse after her arrest and found rolling papers.

Legal Standard

{¶ 7} The Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution protect individuals against unreasonable governmental searches and seizures. A warrantless search is per se unreasonable, unless an exception to the warrant requirement applies. *State v. Kessler* (1978), 53 Ohio St.2d 204, 207, 7 O.O.3d 375, 373 N.E.2d 1252; *Katz v. United States* (1967), 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576. Once a defendant demonstrates that he was subjected to a warrantless search or seizure, the burden shifts to the state to establish that the search or seizure was constitutionally permissible. See *Maumee v. Weisner* (1999), 87 Ohio St.3d 295, 297, 720 N.E.2d 507; *State v. Akron Airport Post No. 8975* (1985), 19 Ohio St.3d 49, 51, 19 OBR 42, 482 N.E.2d 606. The state's burden of proof on a motion to suppress is a preponderance of the evidence. *Xenia v. Wallace* (1988), 37 Ohio St.3d 216, 524 N.E.2d 889, paragraph two of the syllabus; *Athens v. Wolf* (1974), 38 Ohio St.2d 237, 67 O.O.2d 317, 313 N.E.2d 405.

Legal Analysis

{¶ 8} As was discussed at the hearing, the court concludes that the initial stop of Suter's vehicle was a legitimate, lawful traffic stop and was not violative of Suter's rights. Officer Bininger's decision to stop Suter was reasonable in light of the early morning hour in which he encountered her, the fact that her vehicle matched the description of a vehicle seen leaving the area of the purported attempted break-in, and the proximity of Suter's vehicle to the site of the purported attempted break-in. These circumstances combine to establish reasonable suspicion sufficient to justify the stop of Suter's vehicle.

{¶ 9} The court also finds that Officer Bininger's search of the car was permissible pursuant to Suter's consent. The evidence produced by the state at trial convinces the court that Suter's consent to allow Officer Bininger to search

her vehicle was knowingly and voluntarily given. Thus, the central issue is the legality of the search of the container.

{¶ 10} It is undisputed that Officer Bininger's search of the container was conducted without a warrant. The state has put forth three theories of justification for the search. At oral argument, the state argued (1) that Suter had no Fourth Amendment rights in the container and thus the search was not unreasonable, (2) that Suter's consent to search her vehicle extended to the container, and (3) that the plain-view exception to the warrant requirement applies, obviating the need for a warrant. Though only the plain-view argument was taken up in the state's memorandum, the court will address each of these theories.

{¶ 11} With regard to Suter's Fourth Amendment rights in the container, "the Fourth Amendment provides protection to the owner of every container that conceals its contents from plain view." *United States v. Ross* (1982), 456 U.S. 798, 822–823, 102 S.Ct. 2157, 72 L.Ed.2d 572, citing *Robbins v. California* (1981), 453 U.S. 420, 427, 101 S.Ct. 2841, 69 L.Ed.2d 744. The court went on to state that the degree of that protection varies depending on the circumstances, noting that a suitcase may be randomly searched by customs agents or that containers, including those found inside automobiles, may be searched incident to the arrest of the owner. Id. at 823, 102 S.Ct. 2157, 72 L.Ed.2d 572. Other cases have recognized that one may not have Fourth Amendment protections from searches of "rare single purpose containers which by their very nature cannot support any reasonable expectation of privacy because their contents can be inferred from their outward appearance." See *State v. Telthorster* (1997), Licking App. No. 97CA87, 1997 WL 973456; *Arkansas v. Sanders* (1979), 442 U.S. 753, 764–765, 99 S.Ct. 2586, 61 L.Ed.2d 235.

{¶ 12} Though Officer Bininger testified that in his experience, the type of container that fell from Suter's pants is often used to transport narcotics, the court does not find the container to be a rare, single-purpose container. Notably, Officer Bininger did not say that drugs were always found in this type of container or that the contents of the container were immediately apparent to him. Cases discussing single-purpose containers bolster this court's conclusion. Compare *State v. Telthorster* (Dec. 24, 1997), Licking App. No. 97CA87, 1997 WL 973456 (holding that a person does not have any reasonable expectation of privacy in a tied-off piece of opaque plastic, because its contents can be inferred from its appearance and based in part on officer's testimony that he had never seen such a container used to transport anything other than drugs) with *State v. Patrick* (Jan. 12, 2001), Licking App. No. 99CR203, 2001 WL 62288 (holding that a folded index card is not a single-purpose container since officer conceded that contents were not immediately apparent to him). In *Texas v. Brown* (1983), 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502, Justice Powell, in a concurring opinion, concluded that

a tied-off, opaque balloon could be searched without a warrant because no innocent item is commonly found therein. Justice Stevens, in his concurring opinion in *Brown*, concluded that the balloon may be a rare, single-purpose container. Id. at 750–751, 103 S.Ct. 1535, 75 L.Ed.2d 502. The court finds that Suter's metallic container is not as unique as a tied-off balloon or piece of plastic, and therefore Suter did have Fourth Amendment rights in its contents. Accordingly, the court finds no merit in the state's first asserted justification for the search.

{¶ 13} The court similarly rejects the state's argument that Suter's consent to search the vehicle extended to the container. The scope of a consent search is limited by the terms of its authorization and is generally defined by the express object of the search. *State v. Arrington* (1994), 96 Ohio App.3d 375, 377, 645 N.E.2d 96, citing *Florida v. Jimeno* (1991), 500 U.S. 248, 251, 111 S.Ct. 1801, 114 L.Ed.2d 297. "The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of objective reasonableness—what would the reasonable person have understood by the exchange between the officer and the suspect?" Id.

{¶ 14} By his own testimony, Officer Bininger got Suter's consent to search her vehicle for weapons or other tools of a break-in. He testified, "I asked for consent to search the vehicle. * * * I asked her if I could have permission to search her vehicle, take a look for any guns, knives, hand grenades, rocket launchers or anything that might be used in any type of criminal activity." The court has little trouble concluding that a reasonable person would interpret these words to mean that Suter consented to a search of her vehicle for weapons and that her consent did not extend to objects on her person, situated outside the vehicle.

{¶ 15} Further, Officer's Bininger's statement that the container "was part of her" and "part of her consent" suggests that he believed she had consented to a search of her person. However, no search of her person was conducted until after her arrest for possession. In the court's view, if an officer truly believed that he had consent to search a suspect's person or containers on a suspect's person, he would certainly pat the suspect down while searching for weapons before concluding that the suspect was not involved in criminal activity. The court therefore concludes that Suter's consent to search the vehicle did not extend to the container.

{¶ 16} That brings the court to the state's third and most seriously argued justification for the search, the plain-view exception to the warrant requirement. The plain-view doctrine permits the warrantless seizure of private possessions when the officer is lawfully in a position from which he can view a

particular area and when it is immediately apparent to the officer that the items observed may be evidence of a crime, contraband, or otherwise subject to seizure. *State v. Waddy* (1992), 63 Ohio St.3d 424, 588 N.E.2d 819. With regard to the "immediately apparent" requirement, the United States Supreme Court has held that something less than near certainty of an object's illegality will justify a seizure under the plain-view doctrine, and a plurality of the court concluded that probable cause to associate the item to be seized with criminal activity is sufficient. See *Texas v. Brown*, 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502. Ohio courts have since adopted the view that the "immediately apparent" requirement is satisfied when police have probable cause to associate an object with criminal activity. *State v. Halczyszak* (1986), 25 Ohio St.3d 301, 25 OBR 360, 496 N.E.2d 925, paragraph three of the syllabus; see, also, *State v. Thompson* (1999), 134 Ohio App.3d 1, 3, 729 N.E.2d 1268, discussing *Texas v. Brown*.

{¶ 17} The court concludes that Officer Bininger was lawfully present in the position from which he observed the container since, as discussed earlier, the initial stop of the defendant was reasonable. Whether his seizure and subsequent search of the container violated Suter's Fourth Amendment rights therefore depends upon whether the officer had probable cause to associate the container with criminal activity. The court concludes that he did.

{¶ 18} "Probable cause to associate an object with criminal activity does not demand certainty within the minds of police, but instead merely requires that there be 'a fair probability' that the object they see is illegal contraband or evidence of a crime." *State v. Thompson* (1999), 134 Ohio App.3d 1, 4, 729 N.E.2d 1268, citing *State v. George* (1989), 45 Ohio St.3d 325, 544 N.E.2d 640, paragraph one of the syllabus. Further, probable cause must " 'be viewed from the vantage point of a prudent, reasonable, cautious police officer on the scene at the time of * * * arrest guided by his experience and training.' " *State v. Freeman* (Mar. 15, 2002), Trumbull App. No. 2001-T-0008, 2002 WL 408601, quoting *United States v. Davis* (C.A.D.C.1972), 458 F.2d 819, 821. "In ascertaining the required probable cause to satisfy the 'immediately apparent' requirement, police officers may rely on their specialized knowledge, training and experience." *State v. Halczyszak*, 25 Ohio St.3d 301, 25 OBR 360, 496 N.E.2d 925, paragraph four of the syllabus.

{¶ 19} The circumstances surrounding the seizure and search of the container, Officer Bininger's experience that narcotics are often transported in such containers, the suspicious area from which the container came—suggesting that it was hidden—and the fact that one of the passengers was known to Officer Bininger to be a drug dealer, combined to create probable cause.

{¶ 20} Given the conclusion that Officer Bininger had probable cause to associate the container with criminal activity, his seizure of the container was justified under the plain-view doctrine. See *Texas v. Brown*, 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502. However, the *Brown* case raises some concerns about Officer Bininger's subsequent warrantless search of the container. *Brown* was a plurality opinion involving the warrantless seizure of an opaque balloon from the passenger compartment of an automobile. All nine justices agreed that the seizure of the balloon was justified, but the plurality opinion never specifically addressed the subsequent search of the balloon. See id.

{¶ 21} Justice Stevens's concurring opinion stated that the search and seizure must be analyzed separately, since each implicates a different right of the suspect. According to Justice Stevens, the privacy interests one has in the contents of a closed container may, in some cases, require the additional safeguard of a warrant, even when probable cause exists to associate the container with criminal activity. Id. at 749–750, 103 S.Ct. 1535, 75 L.Ed.2d 502. There is a line of cases supporting the idea that in such situation, the officer may lawfully impound the container while seeking a valid warrant, since impoundment is far less intrusive than the warrantless search of the interior. See, e.g., *State v. Everson* (1992), Summit App. No. 15246, 1992 WL 15965; *United States v. Chadwick* (1977), 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538, fn. 8; *Arkansas v. Sanders* (1979), 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235.

{¶ 22} The *Chadwick* and *Sanders* cases, however, have been abrogated in the context of containers found within automobiles. In *California v. Acevedo* (1991), 500 U.S. 565, 111 S.Ct. 1982, 114 L.Ed.2d 619, the court held that when probable cause exists to search a container found in an automobile, the automobile exception to the warrant requirement applies, allowing for its search. Among the reasons for relaxing the warrant requirement is the inherent mobility and likely disappearance of a vehicle and evidence if a search is delayed.

{¶ 23} The court concludes that the reasoning behind *Acevedo* and the automobile exception obviate the need for a warrant in this case. Though the container was not found within the automobile itself, a fact that admittedly seems to align this case more closely with *Chadwick*, it was undoubtedly within the automobile at the time that Officer Bininger stopped Suter. The encounter came about as a result of Officer Bininger's stop of Suter's automobile, which was suspicious because it matched the description of an automobile seen leaving the area of the purported break-in. Officer Bininger had probable cause to search the container based on his experience with similar containers in the past, the suspicious location where Suter was storing the container, and one of the passenger's drug history. The container was within the automobile at the time Officer Bininger stopped Suter, and had he not discovered it, it would have left the scene with her. Since

Officer Bininger had probable cause to search the container and the container came from within an automobile, the court finds that the automobile exception applies, and no warrant was required to search the container.

## Conclusion

{¶ 24} For the above stated reasons, the court finds that no constitutional violation occurred in this case and therefore denies Suter's motion to suppress.

Motion denied.