JOURNAL ENTRY and OPINION
{¶ 1} The state appeals the trial court's granting defendant's motion to suppress. For the reasons that follow, we affirm the judgment of the trial court.
 {¶ 2} On February 9, 2005, defendant was indicted on one count of drug trafficking, a felony of the first degree (R.C.2925.03), one count of drug possession, a felony of the first degree (R.C. 2925.11), and one count of possession of criminal tools, a felony of the fifth degree (R.C. 2923.24).
 {¶ 3} In March 2005, defendant filed a motion to suppress and requested an oral hearing. The trial court held a suppression hearing, in which the following facts were developed.
 {¶ 4} On December 29, 2004, Cleveland Police Officer Elvin Negron[1] was on duty for traffic control enforcement. He was parked on Kinsman Avenue, a high drug area. At approximately 7:34 p.m., Negron tracked a white motor vehicle traveling 45 mph in a posted 35 mph zone.
 {¶ 5} After pulling the vehicle over, Negron and his partner, Officer Dunbrook, observed the vehicle passenger, defendant, was not wearing a seat belt and asked him to produce identification. When he replied that he did not have any identification on him, defendant was asked to sit in the patrol car while they verified his identity. He was informed that since he was not wearing a seat belt he would receive a citation. As defendant exited the vehicle,[2] Negron saw a can of "Fix-a-Flat"[3]
sticking out of an inner pocket of defendant's jacket.
 {¶ 6} After defendant was placed in the rear of the police cruiser, Officer Dunbrook unscrewed what turned out to be a false bottom of the canister. Inside, Dunbrook discovered a large amount of crack cocaine. Defendant was arrested and indicted on drug charges. He filed a motion to suppress the drugs found inside the "Fix-a-Flat" cannister.
 {¶ 7} After a suppression hearing, the trial court granted defendant's motion to suppress the drugs. The State now appeals the trial court's judgment and, in doing so, it presents a single assignment of error:
THE TRIAL COURT ERRED IN GRANTING APPELLEE'S MOTION TO SUPPRESS.
 {¶ 8} The state argues that the trial court erred in granting defendant's motion to suppress the contents of the "Fix-a-Flat" container.
 {¶ 9} "On appeal, our standard of review with regard to a motion to suppress is whether the trial court's findings are supported by competent, credible evidence." State v. Ely,
Cuyahoga App. No. 86091, 2006-Ohio-459, ¶ 11. "The trial court's legal conclusions, however, are afforded no deference, but are reviewed de novo." State v. Russell (1998),127 Ohio App.3d 414, 416, 713 N.E.2d 56. The de novo review includes the trial court's legal conclusions on the issue of probable cause. Statev. Gipp, Montgomery App. No. 17369, 1998 Ohio App. LEXIS 6377, at *6, citing Ornelas v. U.S. (1996), 517 U.S. 690,116 S.Ct. 1657, 1663, 134 L.Ed.2d 911.
 {¶ 10} According to the state in the case at bar, the trial court's factual findings are not supported by competent, credible evidence. During the suppression hearing in the case at bar, the trial court made the following factual and legal determinations:
Okay. In the suppression hearing for the State of Ohio versus James Moore, the evidence that was set forth indicated that Mr. Moore was a passenger in the vehicle with other individuals and the vehicle was pulled over in the course of a traffic stop. During the course of that traffic stop, Mr. Moore had to exit from the vehicle, and during the course of that traffic stop, there was a cannister. The cannister was hollow, and inside the hollow cannister crack cocaine was seized. There was not a warrant issued, there was not a drug sniffing dog present. There wasn't any testimony that there was a prior suspicion of criminal activity as set forth in State versus Jones as a criteria. There wasn't any testimony that Mr. Moore was making any furtive gestures * * *. * * * There wasn't any testimony on behalf of the officers who testified that there was a belief of a dangerous weapon.
* * * At no time was there any testimony that there was a dangerous weapon or that the police believed that there was a dangerous weapon or there was any fear for safety.
* * *
Here there was no indication whatsoever that there needed to be a weapons search. There was no criminal activity. Here the officer just indicated that he thought the cannister might have drugs. So the question becomes, if in the past an officer has arrested somebody with a cannister full of drugs, does this make the search actually finding the cannister okay or does the ends justify the means. And, if so, when. So I had to go through all the cases about that.
* * *
We don't have any testimony in this case whatsoever about any fear of destruction of the drugs. In fact, the officer testifying indicated that the reasons he didn't wait were other. He didn't want to inconvenience the defendant for a 20 minute period of time because in his mind that was unconstitutional to do so, so he didn't want to wait to search the canister while he got a warrant or wait while there was a dog called because somehow somebody knew of a case that you couldn't wait more than 20 minutes. So he talked about that. So he talked about inconvenience, he talked about Constitutional rights, so he never talked about there being any fear of exigency of destruction of the drugs.
So when you're looking at the Osborn case which does not allow the search, and then applying Fuller to the case, so far we don't have any probable cause for the search.
* * *
I looked at this six ways to Sunday. I can't say anything other than this was [sic] bad search. There wasn't probable cause, consent or valid warrant to conduct the search so the motion to suppress is granted, and, Mr. Moore, your case is dismissed.
Tr. 60-73.
 {¶ 11} The Fourth Amendment protects persons against unreasonable searches and seizures. State v. Howard, Montgomery App. No. 20321, 2004-Ohio-5287, ¶ 29. "Warrantless searches are per se unreasonable, and therefore illegal, unless the state successfully demonstrates one or more of the several recognized exceptions to the Fourth Amendment warrant requirement." Id., citing Katz v. United States (1967), 389 U.S. 347, 357,88 S.Ct. 507, 19 L.Ed.2d 576.
 {¶ 12} "Where there is no search warrant, the burden falls on the state to show that a search comes within one of the judicially recognized exceptions: (a) a search incident to a lawful arrest; (b) consent signifying waiver of constitutional rights; (c) the stop-and-frisk doctrine; (d) hot pursuit; (e) probable cause to search, and the presence of exigent circumstances; or (f) the plain-view doctrine." Id., citingState v. Akron Airport Post
 {¶ 13} 8975 (1985), 19 Ohio St.3d 49, 482 N.E.2d 606, at syllabus.
Plain View As a Basis to Seize the Can
 {¶ 14} In the case at bar, the state argues that it did not need to obtain a search warrant to initially seize defendant's container. The container was visible inside defendant's inner jacket pocket, and, therefore, it falls under the "plain view" exception to the warrant requirement.
 {¶ 15} During a lawful traffic stop, police officers may seize contraband they find in "plain view." "[T]o justify the warrantless seizure of an item under the plain view doctrine: (1) the seizing officer must be lawfully present at the place from which he can plainly view the evidence; (2) the officer has a lawful right of access to the object itself; and (3) it is immediately apparent that the item seized is incriminating on its face." Horton v. California, 496 U.S. 128, 136-37,110 L.Ed.2d 112, 110 S.Ct. 2301 (1990); State v. Waddy (1992),63 Ohio St.3d 424, 442, 588 N.E.2d 819; State v. Jones, Washington App. No. 03CA61, 2004-Ohio-7280, ¶ 35.
 {¶ 16} In the case at bar, Negron testified that, after he pulled Hazard's vehicle over for speeding, he and Dunbrook approached the vehicle. Hazard was asked to produce her driver's license, but she did not have any identification on her. She was arrested and put into the back of the police cruiser.
 {¶ 17} Negron then spoke to defendant, who was seated in the passenger seat. Negron informed defendant that he would be given a citation for failing to wear his seat belt. When asked for identification, defendant responded he had none. He was then asked to step out of the vehicle. As defendant stepped out, Negron observed, in plain view, a container sticking out of the inner pocket of defendant's open jacket. The question is whether what Negron saw provided probable cause to seize the "Fix-a-Flat" container from defendant's coat pocket.
Dangerous Weapon
 {¶ 18} The state challenges the trial court's conclusion that there was no evidence that Negron believed the canister was a dangerous weapon. We agree with the state that the court erred in its summary of the officers' testimony. Negron testified that he removed the canister from defendant because it was "a hard object and he can strike us if he were going to attack or be aggressive."[4] Tr. 10.
 {¶ 19} The record, however, belies Negron's stated fear that defendant might use the can as a weapon. The evidence demonstrates that defendant fully cooperated with Negron and Dunbrook. At each juncture, defendant did as he was asked. As noted by the trial court, there is no evidence of any furtive gestures by either defendant or Hazard either before or after the vehicle was pulled over. There was no indication of any criminal activity by defendant. There is no evidence that defendant was under the influence of any drugs or other illegal substances. From this evidence, there is no foundation for Negron thinking that defendant was aggressive or violent in any way.
 {¶ 20} Further, in preparation for the pat down, Negron had defendant put his hands on the vehicle and Negron placed the "Fix-a-Flat" container on the hood of the car, a couple of feet away from the defendant. Having placed the container within defendant's reach, Negron could not reasonably claim he believed that it could be used as a dangerous weapon.
 {¶ 21} From the record before us, we conclude Negron did not have probable cause to believe as a basis for seizing the can that defendant was dangerous or that he would use the container as a weapon.
Contents of Canister: Basis for Search
 {¶ 22} Nor is it "immediately apparent that the item seized is incriminating on its face." Horton, supra. In State v.Jones, supra, ¶ 35, the court explained that even when an object is in plain view, the officer must nonetheless have probable cause to believe that the object contains contraband without conducting a further search of it. The incriminating nature of the object must be "immediately apparent."
 {¶ 23} Negron explained his reason for believing that the container contained drugs. He testified that he had personally been involved in three criminal cases in six years in which similar canisters had been modified with false bottoms. In those cases, the canisters were a "Rave" hair spray can, a "WD-40" can, and a "Pepsi" can. Negron had also seen police notices about containers with drugs inside.
 {¶ 24} According to Negron, defendant's demeanor changed after he seized the container. He began sweating profusely, talking continually, and would not take his eyes off the can. As a result of his training and experience, Negron believed defendant's container had drugs inside.
 {¶ 25} After the pat down for weapons, Negron placed defendant in the back of the patrol car. Negron and Dunbrook then went back to retrieve the container from the hood of Hazard's vehicle.
 {¶ 26} Negron admitted that he could not see the contents of the container by just looking at it; there was nothing to indicate that it contained drugs. Nonetheless, he stated that the can "just didn't feel right" and he "knew there was contraband in [appellee's] can." Tr. at 29, 31, 39.
 {¶ 27} Officer Dunbrook, an eight-year veteran of the Cleveland Police Department, has also made hundreds of drug arrests. He too testified at the suppression hearing. Much of Dunbrook's testimony confirms Negron's version of the events on December 29th.
 {¶ 28} Dunbrook testified that, like Negron, in his experience as a police officer, he has seen similar canisters used as false containers for contraband. Dunbrook confirmed that after Negron took the canister from defendant, he too noticed defendant's demeanor change. He also confirms that after defendant was placed inside the police cruiser, he picked up the can from the hood of Hazard's vehicle. Dunbrook stated that the can felt top-heavy and he could hear things rattling inside. He believed that the container had contraband inside. On cross-examination, Dunbrook denied being familiar with aerosol paint cans that rattle when shaken. Dunbrook testified that the container's bottom was loose, so he unscrewed it and found crack cocaine inside.
 {¶ 29} We do not agree this testimony demonstrated probable cause to believe the canister contained drugs. Negron's testimony that he knew the container had drugs inside was mere speculation. He admitted that he could not see the contents of the container. And, even though he testified that he had three prior experiences with drugs hidden in a "Rave" hair spray can, a "Pepsi" can, and a "WD-40" can, Negron never testified that he ever encountered drugs hidden in a "Fix-a-Flat" container. None of Dunbrook's testimony adds anything that would establish a basis for probable cause. We are persuaded by defense counsel's argument that Fix-a-Flat canisters are not "rare single purpose containers" whose "contents can be inferred from their outward appearance." In State v. Thompson (1999), 134 Ohio App.3d 1, 3,729 N.E.2d 1268, the court determined that even though the officer said he had reason to suspect that the defendant might have crack cocaine in a contact lens case, he failed to demonstrate that he had probable cause for such belief. "Although Evans testified he had known drug users to keep crack cocaine inside contact lens cases, he didn't testify how often this occurs." The second appellate district affirmed the suppression of the contents of the contact lens case.
 {¶ 30} In State v. Suter, 132 Ohio Misc.2d 6,2005-Ohio-3461, 831 N.E.2d 1093, police conducted a traffic stop of a vehicle in which defendant was a passenger. Just as police were going to send defendant on her way, a small metal container fell out of her pant leg onto the ground. Police seized the container, opened it, discovered drugs, and arrested defendant. During a hearing on defendant's motion to suppress the drugs found in the container, the officer who seized the container stated that "in his experience as a police officer, which includes advanced training in drug policing, the type of container at issue is commonly used to transport drugs and is sold for just that purpose." Id., ¶ 5.
 {¶ 31} The Clermont County Court of Common Pleas assessed the officer's testimony about the container as follows:
Though Officer Bininger testified that in his experience, the type of container that fell from Suter's pants is often used to transport narcotics, the court does not find the container to be a rare, single-purpose container. Notably, Officer Bininger did not say that drugs were always found in this type of container or that the contents of the container were immediately apparent to him. Cases discussing single-purpose containers bolster this court's conclusion. Compare State v. Telthorster (Dec. 24, 1997), Licking App. No. 97CA87, 1997 Ohio App. LEXIS 6104, 1997WL973456 (holding that a person does not have any reasonable expectation of privacy in a tied-off piece of opaque plastic, because its contents can be inferred from its appearance and based in part on officer's testimony that he had never seen such a container used to transport anything other than drugs) withState v. Patrick (Jan. 12, 2001), Licking App. No. 99CR203, 2001WL62288 (holding that a folded index card is not a single-purpose container since officer conceded that contents were not immediately apparent to him). In Texas v. Brown
(1983), 460 U.S. 730, 75 L.Ed.2d 502, 103 S.Ct. 1535, Justice Powell, in a concurring opinion, concluded that a tied-off, opaque balloon could be searched without a warrant because no innocent item is commonly found therein. Justice Stevens, in his concurring opinion in Brown, concluded that the balloon may be a rare, single-purpose container. Id. at 750-751. The court finds that Suter's metallic container is not as unique as a tied-off balloon or piece of plastic, and therefore Suter did have Fourth Amendment rights in its contents. Accordingly, the court finds no merit in the state's first asserted justification for the search.
Id., ¶ 12.[5] We agree with this analysis and adopt it in the case at bar. Because we have concluded there was no probable cause to seize the canister, we need not consider whether there was any probable cause to proceed to search it.
 {¶ 32} The state's sole assignment of error is overruled.
Judgment accordingly.
It is ordered that appellee recover of appellant his costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Sweeney, P.J., and Corrigan, J., concur.
[1] A thirteen-year veteran of the Cleveland Police Department.
[2] The parties agree that Negron's request that defendant exit the vehicle was lawful. See, Pennsylvania v. Mimms (1997),434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331.
[3] The record indicates that the actual name on the can was "Gunk Big Puncture Seal."
[4] Negron never stated that when he removed the canister from defendant's pocket he thought it might contain drug contraband.
[5] The court went on, however, to find that the officer had probable cause to open the container under the plain-view doctrine. The court stated:
The circumstances surrounding the seizure and search of the container, Officer Bininger's experience that narcotics are often transported in such containers, the suspicious area from which the container came — suggesting that it was hidden — and the fact that one of the passengers was known to Officer Bininger to be a drug dealer, combined to create probable cause.
Id., ¶ 19.
In the case at bar, there is little to none of the evidence described in Suter, supra. Moreover, in the case at bar, defendant had the Fix-a-Flat inside his jacket pocket which is not necessarily an attempt to hide the can. In Suter, the metal container fell out of the defendant's pant leg which indicated to the officer that the defendant was attempting to hide the object.