{¶ 1} Appellant, the state of Ohio, appeals from the June 16, 2006 judgment of the Cuyahoga County Court of Common Pleas granting the motion to suppress filed by defendant-appellee, Corey Middleton. After reviewing the facts of the case and the pertinent law, we reverse and remand.
 {¶ 2} On January 25, 2006, the Cuyahoga County Grand Jury returned a one count indictment charging Middleton with carrying a concealed weapon in violation of R.C. 2923.12. On March 13, 2006, Middleton filed a motion to suppress the evidence. The trial court held a suppression hearing on April 17, 2006.
 {¶ 3} At the hearing, the state presented two witnesses, Detective Rodney McClendon ("Detective McClendon") and Detective Gerald Crayton ("Detective Crayton"), of the city of Cleveland Police Department, Sixth District Vice Unit. Detective McClendon testified he had been a police officer for nineteen years and fifteen of those years, he had worked as a detective in the vice unit. On November 29, 2005, Detective McClendon was working with Detective Crayton, Sergeant Purcell, Detective Murphy, Detective Kevin Friedman, and Robert Gloveman. During routine patrol, the vice unit was checking the area of East 105th Street and Gooding, in Cleveland, Ohio, Cuyahoga County. Detective McClendon stated the area is a high crime area that is known for drug activity. They were in two unmarked vehicles, with two detectives in each vehicle. The detectives wore jackets that stated "police" on the front and back.
 {¶ 4} Detective McClendon testified that while patrolling the area of 105th Street and Gooding, they observed four males and one female standing around a blue Chevy Caprice automobile in the parking lot of a take-out food establishment. They also noticed a truck in the parking lot. The vice unit pulled up to the group of individuals and blocked them in with their vehicles. They did not activate their sirens or lights on the police vehicles.
 {¶ 5} Detective McClendon said that when the males realized they were the police, one male started walking westbound on Gooding towards East 105th Street. A juvenile male started walking eastbound and Detective McClendon called out to him. Detective McClendon was outside of his vehicle when he saw the juvenile throw down a .25-caliber-automatic pistol. He stopped the juvenile at that point.
 {¶ 6} Detective McClendon then testified that his sergeant stopped the other male who was walking westbound. The sergeant patted down the male for officer safety and discovered that he was in possession of a crack pipe. The remaining people were ordered to get down on the ground and they were also patted down for officer safety and protection. Detective McClendon stated that it is common practice to pat everyone down for safety reasons because in the past few years, more young males have been carrying guns in that area.
 {¶ 7} Detective McClendon noticed a set of keys lying on the ground. Middleton was lying between the Chevy Caprice and the keys, with the keys being two feet from Middleton and the Chevy Caprice being two to three feet on the other side of Middleton. The other male and female at the scene were lying near the truck in the parking lot. Detective McClendon asked Middleton and the other individuals who the keys belonged to, but no one acknowledged ownership of the keys. Detective McClendon then attempted to open the passenger door of the Chevy Caprice with the key found on the ground and the key unlocked it.
 {¶ 8} Detective McClendon then went inside the vehicle and saw a jacket with writing on the back of it, on the floor by the steering wheel. He looked inside the pocket of the jacket and discovered a nine-millimeter handgun, loaded with six rounds and he believed one was in the chamber.
 {¶ 9} Also inside the jacket, Detective McClendon found a Sprint phone bill with Middleton's name on it.[1] He testified the jacket was green and it said "State Property" on the back of it. He further stated that he also found nine-millimeter shell casings on the floor of the vehicle, but he was not sure if they came from the nine-millimeter handgun. Once they discovered the green "State Property" jacket had Middleton's information in it, they arrested him for carrying a concealed weapon.
 {¶ 10} On cross-examination, Detective McClendon testified the incident occurred at eight-thirty in the evening. Detective McClendon stated that he did not see Middleton drive the Chevy Caprice into the parking lot, nor did the vehicle come back listed to Middleton. He said that he did not know to whom the vehicle belonged. The other male and female left the scene in the truck.
 {¶ 11} On redirect examination, Detective McClendon stated that no one claimed ownership of the keys, which heightened his suspicion. He also said that the keys did not have mud or dirt on them, so they looked like they were freshly thrown on the ground.
 {¶ 12} The trial court then questioned Detective McClendon. Detective McClendon explained to the judge that the parking lot was not fenced in, but it had a little guard rail on the outside. He also said that when the police vehicles pulled up to the group of individuals, two males quickly walked away from the others in the group and that based on his experience, this heightened his suspicion of drug activity.
 {¶ 13} Next, Detective Crayton testified for the state and substantiated Detective McClendon's testimony. Detective Crayton said that he had been a police officer with the Cleveland Police Department, Sixth District Vice Unit for thirteen years. Prior to this, he worked for five years in basic patrol in the Sixth District.
 {¶ 14} He testified that on November 29, 2005, he was working with the vice unit and his partner was Detective McClendon. In the vehicle in front of them was Sergeant Purcell and Detective Murphy. As the police vehicles drove down the street, the officers noticed a group of individuals standing in a parking lot next to a parked vehicle on the other side of a guard rail. Detective Crayton testified the police vehicles pulled up to the group of individuals but stayed on Gooding Street because of the guardrail.
 {¶ 15} When they pulled up to the group, two males walked away. The adult male was stopped by Detective Purcell and Detective Murphy. The juvenile male was seen dropping a gun and he was handcuffed by Detective McClendon. Detective Crayton testified he ordered everyone else down on the ground since there was a gun found on a person who had just left those individuals.
 {¶ 16} Detective Crayton called Sereant Purcell on the radio to assist, but he was unavailable and involved with the adult male who had left the group. A dispatcher heard the call and sent a couple zone cars over to assist. They then patted the other individuals down, but did not find any weapons or contraband.
 {¶ 17} Detective Crayton then testified that keys were found next to Middleton, who was next to the Chevy. They asked them who the keys belonged to and who the vehicle belonged to, but no one seemed to know. Crayton stated that Detective McClendon took the keys and tried to open the passenger door and it opened. He testified that Detective McClendon recovered a jacket with a firearm and phone bill inside of it. He stated that the phone bill was for a cellular phone and it had Middleton's name as the addressee. He then testified that they placed Middleton under arrest. Detective Crayton also said that the gun was loaded when it was recovered, and that he had the gun test fired while he was present and it was functional and operable.
 {¶ 18} On cross-examination, Detective Crayton stated that the incident occurred at approximately 6:00 p.m. He explained that the vice unit pulled up to the group of people because they were loitering. Detective Crayton believed the owner of the vehicle was a female, but he did not believe the owner was the female who was at the scene of the incident.
 {¶ 19} Detective Crayton further said on re-direct examination that they opened the Chevy to determine whose car it was. They saw keys lying on the ground and they did not want the car to get stolen. He admitted on re-cross examination that the vehicle had a license plate on it and it was legally parked. Finally, upon questioning by the trial court, Detective Crayton explained the scene occurred in the parking lot of a take-out food restaurant with no seating and that the business was open at the time of the incident.
 {¶ 20} In a judgment entry dated June 16, 2006, the trial court granted Middleton's motion to suppress. It is from this judgment that the state filed a timely notice of appeal and makes the following assignment of error:
 {¶ 21} "The trial court erred when it granted defendant's motion to suppress evidence where the defendant had no Fourth Amendment standing to argue that police illegally searched an automobile where defendant had disclaimed any interest in the vehicle. * * *"
 {¶ 22} At a hearing on a motion to suppress, the trial court functions as the trier of fact, and is in the best position to weigh the evidence by resolving factual questions and evaluating the credibility of the witnesses. State v. Jackson, 8th Dist. No. 85639, 2005-Ohio-5688, at _6, citing State v. Mills (1992), 62 Ohio St.3d 357, 366. On review, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. Id., citing State v.Harris (1994), 98 Ohio App.3d 543, 546. Once the factual findings are accepted, the reviewing court must independently determine as a matter of law whether the applicable legal standard has been satisfied. Id., citing State v. Lloyd (1998), 126 Ohio App.3d 95, 100-101.
 {¶ 23} The rights assured under the Fourth Amendment are personal rights which can result in the exclusion of evidence when an individual's protection is infringed upon by an unlawful search and seizure. Rakas v. Illinois (1978), 439 U.S. 128, 138. Before an individual is permitted to challenge the legality of a search, he or she must first demonstrate that the search and seizure infringed upon a Fourth Amendment right. Id. In order for a defendant to show a Fourth Amendment violation, he or she must be able to show a legitimate expectation of privacy in an area searched. Rawlings v. Kentucky (1980),448 U.S. 98, 104, citing Katz v. United States (1967), 389 U.S. 347.
 {¶ 24} The Ohio Supreme Court has held that an individual who is in lawful possession of a vehicle, although not the titled owner, does possess a legitimate expectation of privacy in the vehicle searched, if he or she can demonstrate that the owner gave them permission to use the vehicle. State v. Carter (1994), 69 Ohio St.3d 57, 63. See also,State v. Hines (1993), 92 Ohio App.3d 163, 166.
 {¶ 25} In State v. Hill (Feb. 19, 1999), 1st Dist. No. C-971098, 1999 Ohio App. LEXIS 542, a police officer conducted a legal search of a vehicle and seized drugs, contraband, and weapons from inside the vehicle, the glove compartment, and the trunk. Hill appeared to disclaim an interest in the car on the basis that an unknown female, and not Hill, owned the car. Id. at 6-7. The First District stated that if Hill's position is accepted as true, then, absent an interest the car, Hill lacked standing to challenge the search and seizure. Id. at 7.
 {¶ 26} In State v. Robinson (July 12, 2001), 8th Dist. No. 77981, 2001 Ohio App. LEXIS 3096, the keys to a vehicle were on the appellee's person, but he repeatedly testified he did not own the vehicle where the drugs were found. This court held, "the mere possession of keys to the vehicle, taken in conjunction with the appellee's testimony that he did not own the vehicle, does not demonstrate a sufficient possessory interest in the vehicle or a reasonable expectation of privacy." Id. at 7. Thus, we concluded that the appellee did not possess the standing required to challenge the police search of the vehicle. Id.
 {¶ 27} In the instant case, Middleton attempts to argue that he "took normal precautions to maintain his privacy" in the area searched. During the incident, Middleton maintains that although he was outside the vehicle, he remained in close physical proximity to the Chevy Caprice. He also claims that the keys were discovered on the ground of the parking lot, only two feet away from him and that the doors to the vehicle were closed and locked. Finally, Middleton argues that the jacket was located on the floor of the vehicle, not in plain view and that the gun was discovered because Detective McClendon reached inside the pocket of the jacket.
 {¶ 28} However, if Middleton wanted to take normal precautions to maintain privacy, he should have declared to the police officers that he was in lawful possession of the Chevy. Detectives McClendon and Crayton stated that they asked Middleton and the other individuals who owned the Chevy and who owned the keys that were found on the ground of the parking lot. No one acknowledged ownership and no one seemed to know who owned the vehicle or the keys. Middleton did not assert ownership of the vehicle, nor did he contend that he was in lawful possession of the vehicle. Thus, Middleton lacks standing to challenge the search and seizure.
 {¶ 29} Middleton also argues, even if he lacked a privacy interest in the vehicle, the trial court did not err in granting his motion to suppress because the police seized him "long before the search [of] the vehicle." First, he contends that when the officers approached the group of individuals, they parked the police cruisers in such a way to block them in the parking lot. He then argues the police violated his rights when they continued to detain him after they patted him down and did not find any contraband.
 {¶ 30} However, Middleton's final arguments attempt to justify the trial court granting the motion to suppress, excluding evidence which was found as a result of a search of the vehicle. Because we find that Middleton did not have a privacy interest in the vehicle, he lacks standing to challenge the search of that vehicle and the seizure of the gun. Thus, Middleton's final argument is without merit.
 {¶ 31} Accordingly, the state's sole assignment of error is sustained. The judgment of the Cuyahoga County Court of Common Pleas is reversed and remanded for further proceedings consistent with this opinion.
Judgment reversed and remanded.
It is ordered that appellant recover from appellee costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
MARY JANE BOYLE, JUDGE
JAMES J. SWEENEY, P.J., and MELODY J. STEWART, J., CONCUR
[1] Detective McClendon then identified Middleton in court.