**[Cite as *State v. Houston*, 2013-Ohio-686.]**

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
SCIOTO COUNTY

| | |
|---|---|
| STATE OF OHIO, | : |
| | : |
| Plaintiff-Appellee, | : Case No. 12CA3472 |
| | : |
| vs. | : |
| | : DECISION AND JUDGMENT |
| MARCO DWAYNE  HOUSTON, | : ENTRY |
| | : |
| Defendant-Appellant. | : **Released: 02/07/13** |

_____

APPEARANCES:

Elbert L. Hatchett, Pro Hac Vice Counsel, Pontiac, Michigan, and Vicki
Lynn Ward, Local Counsel, Cleveland, Ohio, for Appellant.

Mark E. Kuhn, Scioto County Prosecuting Attorney, and Pat Apel, Scioto
County Assistant Prosecuting Attorney, Portsmouth, Ohio, for Appellee.

_____

McFarland, P.J.

{¶1}  Marco D. Houston appeals his conviction in the Scioto County
Court of Common Pleas after he was found guilty of trafficking in drugs
with a forfeiture specification, a violation of R.C. 2925.03(A)(2)(c)(1)(e),
possession of drugs, a violation of R.C. 2925.11(A)/(C)(1)(d), and tampering
with evidence, a violation of R.C. 2921.12(A)(1).   On appeal, Houston
contends (1) the trial court erred by denying Appellant's motion to suppress
when he was seized and detained beyond the time necessary to effectuate a
parking violation; (2) he was denied effective assistance of counsel when his

attorney was inadequately prepared to argue the suppression motion and advised Appellant to withdraw his "no contest" plea and enter a plea of "guilty," thereby waiving issues on appeal; and, (3) the trial court committed plain error when it sentenced Appellant on three separate charges of similar import, thereby, rendering the sentence null and void.   For the reasons which follow, we disagree with Appellant.  Accordingly, we overrule all assignments of error and affirm the judgment of the trial court.

                                                  FACTS

{¶2}  Appellant was arrested for various drug- related offenses on September 9, 2011.  He was later indicted, arraigned, and scheduled for trial. During the trial court proceedings, he and a co-defendant, Danny Horsley, filed motions to suppress.[1]  Appellant's motion requested an order suppressing all evidence as it was obtained as the result of an unconstitutional seizure of Appellant's person and vehicle.

{¶3}  At the suppression hearing, Officer Tiffany Hedrick ("Hedrick") of the Portsmouth Police Department testified on September 9, 2011, she was on routine patrol in the "East End" of Portsmouth at 9:20 a.m. when she observed a white Chevrolet Malibu parked at an angle, obstructing traffic. The vehicle's right front tire was over twelve inches from the curb and the

---

[1] Co-defendant Horsley has several aliases and was also known under the name "Clyde Lark."

right rear tire approximately two to three feet from the curb. R.C. 4511.69 and Portsmouth City Ordinance 351.04 prohibit parking more than twelve inches from the curb. The "East End" is known as a high crime area due to the volume of crimes involving prostitution, drugs, thefts, and burglaries. Hedrick initiated a traffic stop on her inboard computer, ran the license plate, and discovered the vehicle was a rental car from Cleveland, Ohio. She then contacted Patrolman Steve Timberlake ("Timberlake") because he was looking for a white vehicle earlier in the day.

{¶4} Patrolman Timberlake testified on the morning of September 9th, he received information that two black males in a white rental car were selling drugs in the Farley Square area. Earlier, Timberlake could not find them, but he notified other officers. When Hedrick contacted him, Timberlake arrived at the scene in less than two minutes. Hedrick had begun writing a parking ticket. Timberlake noted the white rental car was parked near a residence surrounded by a chain link fence. He was familiar with the residence due to his previous work assignment with the narcotics unit. Timberlake had seized a large quantity of cocaine from the previous residents, drug traffickers.

{¶5} At that point, Appellant came out of the residence. Appellant asked if there was a problem with the vehicle. Hedrick informed him it was

parked illegally, and Appellant immediately went back into the house. Shortly thereafter, Appellant exited the house a second time and offered to move the vehicle. The officers told him he needed identification because they were going to issue a parking citation. Appellant then went back into the house. Soon, Appellant exited the house a third time and evasively continued around the fence and the back of the car. The officers thought he was possibly trying to get in the car and drive away. Hedrick and Timberlake again requested identification.

{¶6} Appellant then produced his ID. He acted nervous and kept trying to walk away from the officers. Timberlake testified based on Appellant's erratic and evasive actions, along with the confidential information he had heard in the morning, he did a pat-down search for weapons. During this pat-down, Appellant backed away from Timberlake. When Timberlake finished the pat-down, he told Appellant to sit on the curb while he was being detained for the warrant check.

{¶7} Lee Bower ("Bower"), a narcotics detective and canine handler testified he received a call from Timberlake on September 9th, advising him that Hedrick was with a new white Chevy on 8th Street. When he arrived, Appellant was lying down, but as he walked up to Appellant, Appellant began walking away and looking around. Bower said "Hey, you're making

me nervous." Appellant replied "Well you're making me nervous." Bower asked: "Well would you feel better if you set in the back of the patrol car?" Appellant answered "Yes." He was placed in the back of Hedrick's cruiser. Appellant told Timberlake his cousin was inside the house, yet he was unable to provide his cousin's name.

{¶8} Timberlake briefed Bower on Appellant's nervous, erratic and evasive actions. Bower and Timberlake proceeded to the house's front door. Hedrick went to the rear door. Sherry Dixon opened the front door and let the officers inside. Dixon advised Appellant was visiting her boyfriend, who inexplicably had just run out the back door. Bower asked for permission to search the house and Dixon gave consent. Dixon, another male, and a child were inside the house. The officers separated. Bower saw another male in the house, who ended up being co-defendant Horsley. Bower did a pat-down and requested Horsley's ID. The other officers told Hedrick to come inside the house. Bower handed Hedrick Horsley's ID, and Bower walked outside.

{¶9} Bower decided to have his canine sniff the white Malibu. Bower testified by now, he had been on the scene approximately ten minutes. The dog alerted on the driver's side door. Bower told Appellant the dog alerted. Appellant advised he had been stopped by law enforcement in

West Virginia the night before and there was nothing in the car.  Bower

testified Appellant gave him consent to check the car.   When Bower

searched the car, he discovered over $13,000.00 in cash, 1000 oxycodone

pills, and over 100 Opana pills.  Appellant and co-defendant Horsley were

subsequently arrested at the scene.  Timberlake testified the warrant check

was completed sometime after the officers cleared the house.

{¶10}  The date of the parking ticket is listed at 9:32 a.m. by Officer

Hedrick.   Appellant's name does not appear on the ticket. Appellant was

arrested at 9:50 a.m.  Appellant did not testify at the suppression hearing.

The trial court found that at the point Officer Bower asked Appellant if he

would like to sit in the cruiser, Timberlake had not yet received a response to

his inquiry about Houston's ID.  The court found based on the totality of the

circumstances, the officers conducted the issuance of the traffic ticket in a

diligent manner and detained Appellant for a reasonable and lawful time.

The court further found the exterior sniff of the vehicle by the canine was

conducted during the time period necessary to effectuate the original

purpose of the contact between the officers and the defendants.

{¶11}  On November 4, 2011, Appellant entered pleas of no contest to

trafficking in drugs with a forfeiture specification, possession of drugs, and

tampering with evidence.  On February 2, 2012, Appellant was sentenced to

an agreed sentence of consecutive prison terms on the charges, for a total

stated prison term of ten years.  This appeal followed.

ASSIGNMENTS OF ERROR

I. THE TRIAL COURT IMPROPERLY DENIED DEFENDANT'S
MOTION TO SUPPRESS WHEN THE SEIZURE OF DEFENDANT
EXTENDED BEYOND THE TIME NECESSARY TO
EFFECTUATE THE PARKING VIOLATION AT ISSUE
PURSUANT TO TOWNSEND, BONILLA AND PROGRENY AS
WELL AS OHIO LAW AND ANY EVIDENCE OBTAINED BY
THE RESULTANT SEARCHES WERE FRUIT OF THE
POISONOUS TREE.

II. APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF
COUNSEL AS GUARANTEED BY THE FIFTH, SIXTH, AND
FOURTEENTH AMENDMENTS TO THE UNITED STATES
CONSTITUTION AND SECTIONS 10 AND 16, ARTICLE I OF
THE OHIO CONSTITUTION WHEN TRIAL COUNSEL
INADEQUATELY PREPARED AND INEFFECTUALLY
ARGUED THE SUPPRESSION MOTION, AND ALLOWED
AN/OR ADVISED DEFENDANT TO WITHDRAW HIS "NO
CONTEST PLEA" AND TO PLEAD GUILTY THEREBY
WAIVING THE ISSUE.

III. TRIAL COURT COMMITTED PLAIN ERROR IN
SENTENCING DEFENDANT ON THREE SEPARATE CHARGES
OF SIMILAR IMPORT THAT HE COULD ONLY BE FOUND
GUILTY OF ONLY ONE AND SENTENCED FOR ONLY ONE
RENDERING UNATHORIZED IMPOSED SENTENCE A NULITY
OR
VOID.

ASSIGNMENT OF ERROR ONE

{¶12}  Under this assignment of error, Appellant contends he

voluntarily approached the officers, offered to move his car, and gave his

identification. A background check revealed no outstanding warrants. The

parking citation lists "issue" at 9:32 a.m. and Appellant was arrested at 9:50 a.m. Appellant argues that placing him in the cruiser, questioning Dixon in her house, and having the dog sniff of the vehicle all occurred after the ticket was issued. Therefore, the seizure and investigation occurred beyond the permissible time to detain him. Appellee argues under the totality of the circumstances, the officers had reasonable articulable suspicion to detain Appellant. We agree with Appellee.

## A.  STANDARD OF REVIEW

{¶13} Our review of a trial court's decision on a motion to suppress presents a mixed question of law and fact. *State v. Roberts,* 110 Ohio St. 3d 71, 2006-Ohio-3665, 850 N.E.2d 1168, at ¶ 100, citing *State v. Burnside,* 100 Ohio St. 3d 152, 2003-Ohio-5372, 797 N.E.2d 71, at ¶ 8. When considering a motion to suppress, the trial court acts as the trier of fact and is in the best position to resolve factual questions and evaluate witness credibility. *Id.* Accordingly, we defer to the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Landrum,* 137 Ohio App.3d 718, 722, 739 N.E.2d 1159 (2000). Accepting those facts as true, we must independently determine whether the trial court reached the correct legal conclusion in analyzing the facts of the case. *Roberts* at ¶ 100, citing *Burnside* at ¶ 8.

## B.  LEGAL ANALYSIS

**{¶14}**  In this matter, Appellant argues the officers who detained him had no reasonable suspicion of criminal activity to detain him, outside of his erratic behavior of quickly going in and out of the nearby house three times and looking nervous. As a preliminary consideration, Appellee State of Ohio urges that Appellant does not have standing to raise this issue.

**{¶15}**  "'Standing is defined as a party's right to make a legal claim or seek a judicial enforcement of a duty or right.'"  *Coleman v. Davis,* 4th Dist. No. 10CA5, 2011-Ohio-506, 2011 WL 345772, ¶ 16, citing *State ex rel. Butler Twp. Bd. of Trustees v. Montgomery Cty. Bd. of Commrs.,* 124 Ohio St. 3d 390, 922 N.E.2d 945, 2010-Ohio-169, at ¶ 19, quoting *Ohio Pyro, Inc. v. Ohio Dept. of Commerce,* 115 Ohio St.3d 375, 875 N.E.2d 550, 2007-Ohio-5024, at ¶ 27 (other internal quotation omitted). "'Whether established facts confer standing to assert a claim is a matter of law.'" *Cuyahoga Cty. Bd. of Commrs. v. State,* 112 Ohio St.3d 59, 858 N.E.2d 330, 2006-Ohio-6499, at ¶ 23, quoting *Portage Cty. Bd. of Commrs. v. Akron,* 109 Ohio St.3d 106, 846 N.E.2d 478, 2006-Ohio-954, at ¶ 90.  "'We review questions of law de novo.'"  *State v. Elkins,* 4th Dist. No. 07CA1, 2008-Ohio-674, at ¶ 12, quoting *Cuyahoga Cty. Bd. of Commrs.* at ¶ 23;  see, also, *Bridge v.*

*Midas Auto Experts # 322,* 8th Dist. No. 94115, 2010-Ohio-4681, at ¶ 6

("The question of standing is an issue of law, which we review de novo.")

(citation omitted).

{¶16} Modern understandings of the Fourth Amendment recognize

that it serves to protect an individual's subjective expectation of privacy if

that expectation is reasonable and justifiable. *Rakas v. Illinois,* 439 U.S.

128, 143, 99 S. Ct. 421 (1978); *Katz v. United States,* 389 U.S. 347, 381, 88

S. Ct. 507 (1967) (Harlan, J., concurring); *State v. Buzzard,* 112 Ohio St.3d

451, 860 N.E.2d 1006 (2007).

{¶17} Moreover, an individual must have standing to challenge the

legality of a search or seizure. *Rakas v. Illinois,* 439 U.S. 128, 99 S. Ct. 421

(1978); *State v. Coleman,* 45 Ohio St.3d 298, 544 N.E. 2d 622 (1989). The

person challenging the search bears the burden of proving standing. *State v.*

*Williams,* 73 Ohio St. 3d 153, 652 N.E.2d 721 (1995). That burden is met

by establishing that the person has an expectation of privacy in the place

searched that society is prepared to recognize as reasonable. *Id*; *Rakas v.*

*Illinois,* supra.

{¶18} The Supreme Court of Ohio has held that an individual who is

in lawful possession of a vehicle, although not the titled owner, does possess

a legitimate expectation of privacy in the vehicle searched, if he or she can

demonstrate that the owner gave them permission to use the vehicle. *State v. Carter*, 69 Ohio St. 3d 57, 63, 630 N.E.2d 355 (1994). See also, *State v. Hines,* 92 Ohio App.3d 163, 166, 634 N.E.2d 654 (10th Dist. 1993); *State v. Middleton,* 8th Dist. No. 88327, 2007 Ohio 2227, 2007 WL 1366430, ¶ 25.

{**¶19**}  In this matter, the issue of standing was discussed prior to the parties putting on evidence at the suppression hearing. Both defense counsels argued the State was claiming their clients had possessory interest in the white Chevrolet.  Counsel for Appellant argued his client had standing as the individual who rented the vehicle.  The trial court found that both defendants admitted to standing.

{**¶20**} In *State v. Hale*, 5th Dist. No. 02CA00024, 2002-Ohio-4537, 2002 WL 2016411, at ¶ 12, the appellate court held because appellant was never legally in possession of a rental vehicle and vehicle had been missing from Alamo Rent-a-Car for three months, appellant lacked standing to challenge the search of stolen vehicle.  In *State v. Kitcey*, 11th Dist. No. 2007-A-0014, 2007-Ohio-7124, 2007 WL 4564405, at ¶ 57, the appellate court noted without  a possessory interest in the car [or property subject of the search and seizure] Kitcey lacked standing to challenge the search.

{**¶21**}  However, in *State v. Henderson,* 5th Dist. No. 07COA031, 2008-Ohio-5007, 2008 WL 4408594, ¶ 29, the court of appeals held a

defendant had standing to challenge the search of a rental vehicle even though he was not an authorized driver of the vehicle. The Court noted although appellant's possession might be challengeable as a civil wrong, it did not render his expectation of privacy null and void. *Henderson,* at ¶ 30.

**{¶22}** Here, we agree with the trial court's ruling as to Appellant's standing to challenge the search. Appellant was the person who rented the white Malibu and asserted a privacy interest via his counsel. We turn next to Appellant's argument that the search and seizure here constituted a violation of his Fourth Amendment rights.

**{¶23}** The Fourth Amendment to the United States Constitution and Article I, Section 14 of the Ohio Constitution provide for "[t]he right of the people to be secure * * * against unreasonable searches and seizures * * *." Searches and seizures conducted without a prior finding of probable cause by a judge or magistrate "are per se unreasonable under the Fourth Amendment, subject to only a few specifically established and well-delineated exceptions." *California v. Acevedo,* 500 U.S. 565, 111 S. Ct., 1982 (1991); *State v. Tincher,* 47 Ohio App.3d 188, 548 N.E.2d 251 (1988). If the government obtains evidence through actions that violate an accused's Fourth Amendment rights, that evidence must be excluded at trial. *State v. LeMaster,* 4th Dist. No. 11 CA3236, 2012-Ohio-971, 2012 WL 762542, ¶ 8.

{¶24} The scope and duration of a routine traffic stop "must be carefully tailored to its underlying justification * * * and last no longer than is necessary to effectuate the purpose of the stop." *Florida v. Royer,* 460 U.S. 491, 500, 103 S. Ct. 1319 (1983); see, also, *State v. Gonyou,* 108 Ohio App.3d 369, 372, 670 N.E. 2d 1040 (6th Dist. 1995) and *State v. Hughes,* 4th Dist. No. 97CA2309, 1998 WL 363850, (June 25, 1998), at *3. The rule set forth in *Royer* is designed to prevent law enforcement officers from conducting "fishing expeditions" for evidence of a crime. See generally, *Gonyou*; *Sagamore Hills v. Eller*, 9th Dist. No. 18495, 1997 WL 760693 (Nov. 5, 1997); see, also, *Fairborn v. Orrick,* 49 Ohio App.3d 94, 95, 550 N.E.2d 488, 490 (2nd Dist. 1988), (stating that "the mere fact that a police officer has an articulable and reasonable suspicion sufficient to stop a motor vehicle does not give that police officer 'open season' to investigate matters not reasonably within the scope of his suspicion").

{¶25} "When a law enforcement officer stops a vehicle for a traffic violation, the officer may detain the motorist for a period of time sufficient to issue the motorist a citation and to perform routine procedures such as a computer check on the motorist's driver's license, registration, and vehicle plates." *State v. Aguirre,* 4th Dist. No. 03CA5, 2003-Ohio-4909, 2003 WL 22136234, at ¶ 36, citing *State v. Carlson,* 102 Ohio App.3d 585, 598, 647

N.E. 2d 591 (9th Dist.1995). "In determining if an officer completed these tasks within a reasonable length of time, the court must evaluate the duration of the stop in light of the totality of the circumstances and consider whether the officer diligently conducted the investigation." *Id.*, citing *State v. Cook*, 65 Ohio St.3d 516, 521-522, 605 N.E.2d 70 (1992), (fifteen minute detention was reasonable); *United States v. Sharp*, 470 U.S. 675, 105 S. Ct. 1568 (1985), (twenty minute detention was reasonable).

{¶26} We agree with the trial court's finding that based on the totality of the circumstances, the officers conducted issuance of the traffic ticket in a diligent manner and detained Appellant for a reasonable and lawful length of time. The facts at the suppression hearing demonstrated that Officer Hedrick discovered the white rental vehicle illegally parked, contacted Timberlake, and started writing the ticket. While writing the ticket, Appellant made consensual contact with the officers, and they noticed nervous, erratic, and evasive behavior. The officers requested ID twice and, based on the information known to Timberlake, performed a pat-down search for weapons. Appellant was detained on the curb for a warrants check and soon after, consented to sitting in a cruiser. The trial court noted that at the time Appellant chose to sit in the cruiser, the warrants check had not been completed.

{¶27} In addition to Appellant's nervous, erratic, and evasive actions, there were other factors giving rise to reasonable suspicion of criminal activity which were in the evidence before the trial court. Of chief importance is the factor conspicuously missing from Appellant's brief, that Officer Timberlake testified to having confidential information that two black males driving a white rental vehicle were selling drugs in the area. This information was known before the white rental vehicle was discovered illegally parked in a high crime area.

{¶28} An officer may derive his knowledge from an informant's tip. *State v. Kelley,* 4th Dist. No. 10CA3182, 2011-Ohio-3545, 2011 WL 2792338, at ¶ 25. In *State v. Walker*, 10th Dist. No. 97APA09-1219, 1998 WL 429121 (July 28, 1998), the court held:

> "'* * *[P]olice have probable cause to conduct a search for contraband when detailed information provided to them by a confidential but reliable in formant is subsequently corroborated in some significant combination, with respect to the name or physical description of a suspect, the location of the illegal sale, the time of the sale, the description of the automobile drive by the suspect, or the car's license plate numbers.'"

{¶29} Additionally, an officer may rely upon information collectively known to the law enforcement officers involved in the search or investigations. *Kelley,* at ¶ 26. See *State v. Cook*, 65 Ohio St. 3d 516, 521, 605 N.E.2d 70 (1992). "An officer need not have knowledge of all the facts

necessary to justify [a search], as long as the law enforcement body as a whole possesses such facts and the detaining officer reasonably relies upon those who possess the facts." *Id.* Thus, for example, "[a] radio broadcast may provide the impetus for an investigatory stop, even when the officer making the stop lacks all of the information justifying the stop." *Id.* The Ohio Supreme Court has therefore described the relevant Fourth Amendment inquiry as "whether the law enforcement community as a whole complied with the Fourth Amendment; the entire system is required to possess facts justifying the stop or arrest, even though the arresting officer does not have those facts." *Id.* (citations omitted). As the court explained in *State v. Royster,* 5th Dist. No. 1997CA00372, 1998 WL 351413, (June 1, 1998) at *3:

{¶30} "In the case of a common investigation, the knowledge of one officer is the knowledge of all, and the collection knowledge of all the investigating officers and the available objective facts are the criteria to be used in assessing probable cause." *United States v. Stratton* (C.A. 1972), 453 Fed.2d 36, 37 cert. denied, 405 U.S. 1069, 92 S. Ct. 1515. See also, *State v. Gough,* 35 Ohio App.3d 81, 82, 519 N.E.2d 842 (5th Dist.1986) (police may rely on collective knowledge in making arrest); *State v. Roach*, 8 Ohio App.3d 42, 455 N.E.2d 1328 (12th Dist. 1982) (officer intruding in

restroom stall did not have knowledge of defendant's conduct, but police department as a whole had probable cause.)"

{¶31}  In this case, Timberlake testified Appellant, while in the cruiser, indicated his cousin was inside the house, yet did not know his cousin's name. Timberlake was also familiar with the house as one where drug traffickers had previously resided. The out-of-county rental vehicle was discovered in a high-crime area.  The tip Timberlake had received contained detailed information. The above factors were combined with Appellant's nervous, erratic, and evasive behavior. We agree with the trial court's finding that under the totality of the circumstances, there was reasonable suspicion of criminal activity to detain Appellant.

{¶32}  Appellant emphasizes the parking ticket was "issued" at 9:32 and argues the purpose of the traffic stop was effectuated at that point.  On the subject of the ticket's "issue," Hedrick testified "he exited the house and we were going to put his name on the ticket is what I planned on doing, and I never ended up doing that."  She finished "Because he started acting nervous, and Timberlake had him sit on the curb."  Bower testified he did not know when the parking ticket was issued. Timberlake first testified ticket was issued at 9:32, yet when asked about when the parking ticket was

placed on the Malibu, testified, "I don't know. I didn't do this parking violation."

{¶33} We would note the ticket lists "issue" as 9:32 a.m. Appellant did not testify so as to clarify his understanding of when the ticket was "issued." Based on Officer Hedrick's testimony, the inference can be made that she began writing the ticket at 9:32 and never fully completed it, due to Appellant's actions which caused him to be detained for the warrants check and the unfolding events at the scene.

{¶34} In this matter, even if Appellant's constitutional rights had somehow been infringed, which we find has not been the case, the independent source doctrine would apply. Evidence discovered in a warrantless search is not derived from a constitutional violation if the evidence would inevitably have been discovered during the course of a lawful investigation. See *State v. Perkins,* 18 Ohio St. 3d 193, 480 N.E. 2d 763(1985), syllabus, citing *Nix v. Williams*, 467 U.S. 431, 104 S. Ct. 2501(1984); *State v. Clary,* 4th Dist. No. 96CA7, 1996 WL 560522 (Sept. 30, 1996), at *3.

{¶35} A lawfully detained vehicle may be subjected to a canine check of the vehicle's exterior even without the presence of a reasonable suspicion of drug-related activity. *State v. Rusnak,* 120 Ohio App.3d 24, 28, 696

N.E.2d 633 (6th Dist.1997). Both Ohio courts and the United States

Supreme Court have determined that "the exterior sniff by a trained

narcotics dog to detect the odor of drugs is not a search within the meaning

of the Fourth Amendment to the Constitution." *State v. Jones,* 4th Dist. No.

03CA61, 2004-Ohio-7280, 2004 WL 3090198, ¶ 24; *United States v. Place,*

462 U.S. 696, 103 S. Ct. 2367 (1983). Thus, a canine check of a vehicle

may be conducted during the time period necessary to effectuate the original

purpose of the stop. *Jones,* at ¶ 24. But if the individual does not act to

preserve that privacy, such as by leaving an object in the plain view of the

public, then the state has not "searched" within the meaning of the

constitution, because the individual has exposed those objects to others,

rather than keeping them to himself. *Katz,* 389 U.S. 361, 88 S. Ct. 507

(Harland, J., concurring); 1 LaFave, *Search & Seizure: A Treatise on the*

*Fourth Amendment* (4th Ed.2004) 445-446, Section 2.2; see, also, *Texas v.*

*Brown,* 460 U.S. 730,740, 103 S. Ct. 1535 (1983) (plurality opinion noting

that a police officer without a warrant is not precluded from viewing what a

private citizen would be able to view); *Buzzard,* supra at ¶ 15. "Although

society generally respects a person's expectations of privacy in a dwelling,

what a person chooses voluntarily to expose to public view thereby loses its

Fourth Amendment protection. See *California v. Ciraolo,* 476 U.S. 207,

213, 106 S. Ct. 1809, 1812-13 (1986); *Buzzard,* 15.  Generally, the police are free to observe whatever may be seen from a place where they are entitled to be.  *Florida v. Riley,* 488 U.S. 445, 449, 109 S. Ct. 693, 696 (1989)." *Buzzard,* 15.

{¶36}  In this matter, had Appellant never exited the residence, Officer Hedrick would have still come up on the illegally parked vehicle and reasonably would have contacted the other officers.  Officer Bower would have arrived on the scene to conduct a lawful canine sniff of the vehicle without permission of Appellant. In fact, Appellant gave permission for the officer to conduct the dog sniff of the vehicle, just as the record demonstrates he consented to sit in the cruiser and Sherry Dixon consented to the search of her residence.   Appellant provided no evidence to contradict this testimony at the suppression hearing.  The trial court found the officers' testimony to be credible.

{¶37}  We agree with the trial court's finding Appellant's detention and search was lawful under the totality of the circumstances.  As such, we overrule Appellant's first assignment of error.

ASSIGNMENT OF ERROR TWO

{¶38} Appellant's argument that his counsel was ineffective is

two-fold.  First, Appellant argues his counsel allowed or advised him to withdraw a previously entered "no contest" plea and enter a guilty plea, thereby waiving his right to appeal the suppression issue. Second, Appellant argues his counsel failed to brief and properly argue the suppression motion. For the reasons which follow, we disagree with Appellant.

### A.  STANDARD OF REVIEW

{¶39} Criminal defendants have a right to counsel, including a right to the effective assistance from counsel.  *McMann v. Richardson,* 397 U.S. 759, 770, 90 S. Ct. 1441 (1970); *State v. Stout,* 4th Dist. No. 07CA5, 2008-Ohio-1366, 2008 WL 757521, ¶ 21.  To establish constitutionally ineffective assistance of counsel, a defendant must show (1) that his counsel's performance was deficient and (2) that the deficient performance prejudiced the defense and deprived him of a fair trial.  *Strickland v. Washington,* 466 U.S. 668, 687, 104 S. Ct. 2052 (1984); *State v. Issa,* 93 Ohio St. 3d 49, 67, 752 N.E.2d 904 (2001); *State v. Goff,* 82 Ohio St.3d 123, 139, 694 N.E.2d 916 (1998).  "In order to show deficient performance, the defendant must prove that counsel's performance fell below an objective level of reasonable representation.  To show prejudice, the defendant must show a reasonable probability that, but for counsel's error, the result of the proceeding would have been different." *State v. Conway,* 109 Ohio St.3d 412, 2006 Ohio-

2815, 848 N.E.2d 810, ¶ 95 (citations omitted). "Failure to establish either element is fatal to the claim." *State v. Jones,* 4th Dist. No. 06CA3116, 2008-Ohio-968, 2008 WL 613116, ¶ 14. Therefore, if one element is dispositive, a court need not analyze both. *State v. Madrigal,* 87 Ohio St. 3d 378, 389, 721 N.E.2d 52 (2000) (stating that a defendant's failure to satisfy one of the elements "negates a court's need to consider the other").

{¶40} When considering whether trial counsel's representation amounts to deficient performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland,* 466 U.S. at 689. Thus, "the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* To establish prejudice, a defendant must demonstrate that a reasonable probability exists that but for counsel's errors, the result of the trial would have been different. *State v. White,* 82 Ohio St.3d 15, 23, 693 N.E.2d 772 (1998); *State v. Bradley,* 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), at paragraph three of the syllabus. Furthermore, courts may not simply assume the existence of prejudice, but must require that prejudice be affirmatively demonstrated. See *State v. Clark,* 4th Dist. No. 02CA684, 2003-Ohio-1707, 2003 WL 1756101, ¶ 22; *State v. Tucker,* 4th Dist. No. 01CA2592, 2002-

Ohio-1597, 2002 WL 507529, (Apr. 2, 2002); *State v. Kuntz,* 4th Dist. No.

1691, 1992 WL 42774, (Feb. 26, 1992).

### B.  LEGAL ANALYSIS

{¶41}  Appellant entered pleas to a charge of trafficking in drugs,

possession of drugs, and tampering with evidence.  At the sentencing

hearing, the court began by reciting the terms of the agreed sentence: (1) on

trafficking, Appellant would be sentenced to a five-year mandatory prison

term; (2) on possession, he would be given a three-year non-mandatory

prison term; and, (3) on tampering Appellant would receive a two-year

prison term.  The court summarized the terms as running consecutively for a

ten-year prison term. At this point, the transcript reflects the sentencing was

interrupted by Appellant's balking at entering a plea to the agreed sentence.

{¶42}  As to Appellant's first contention that his counsel urged him

to plead guilty, the sentencing hearing transcript demonstrates Appellant's

hesitation at entering a plea occurred after the court described the sentence

and when it  added "And there is no agreement at this point in time about a

judicial release."  Appellant claimed he did not agree to the sentence the

court described. Although the transcript does not contain Appellant's request

to terminate his counsel and hire new counsel, the record reflects a

discussion in which the State proposed to proceed with the sentencing or

revoke Appellant's bond. The State submitted "He can file a motion to

withdraw." Shortly thereafter, the court held a bench conference with

counsel, then recessed. When court resumed, the trial court addressed

defense counsel and Appellant, stating, "Now, I've already stated on the

record what the –what the agreement is…is that the agreement?" to which

both Appellant and his counsel responded affirmatively. The court went on

to note Houston would be filing an appeal.

{¶43} We also take note of the judgment entry of sentence dated

February 8, 2012 states as follows in the first paragraph:

> "This cause came on to be heard on the 4th day of November , 2011,
> upon the request of the Defendant by and through the Defendant's
> counsel to withdraw a former plea of no contest guilty and enter a plea
> of guilty."

However, the fifth paragraph of the judgment entry of sentence reads:

> "Upon Defendant's plea of no contest, the Court makes a finding of
> guilty to Count 1 Trafficking in Drugs with a Forfeiture Specification,
> in violation of Ohio Revised Code Section 2925.03(A)(2)/(C), being a
> felony of the first degree, Count 4 Possession of Drugs, in violation of
> Ohio Revised Code Section 2925.11(A), being a felony of the third
> degree, and County 7 Tampering with Evidence, in violation of Ohio
> Revised Code Section 2921.12(A)(1), being a felony of the third
> degree."

In its brief, Appellee State of Ohio sets forth the following on

page 24:

"The State does not contend that the Appellant entered a guilty plea. Rather, the agreement was a no contest plea and the record reflects a no-contest plea.

Therefore, there is no issue on the point of a guilty plea."

{¶44} We agree that there is no issue as to counsel's alleged ineffectiveness with regard to Appellant's plea. Although the first paragraph of the judgment entry of sentence indicates Appellant was entering a guilty plea, the fifth paragraph indicates a no contest plea. The record reflects there was an understanding that Appellant would be filing an appeal. Appellee State of Ohio has not countered in its argument in the first assignment of error that Appellant waived his rights of appeal on the suppression issue by his plea. In fact, Appellee recalls the agreement as on a no contest plea. For the above reasons, we agree with Appellee there is no issue as to Appellant's plea. As such, Appellant's argument that his counsel was ineffective as to the plea entered must fail.

{¶45} Furthermore, we do not agree with Appellant's claim his counsel was ineffective as relates to the briefing of the suppression motion and supplemental filing. Appellant argues the brief was vague and not specific as to the actual issue of inordinate detention. Yet, we note *State v. Chatton,* 11 Ohio St. 3d 59, 463 N.E.2d 1237 (1984) was cited in counsel's motion to suppress, along with the language regarding unlawful detentions.

{¶46} At the conclusion of the suppression hearing, Appellant's counsel requested additional time to brief the issues before the trial court rendered its decision. Appellant also argues his counsel's supplemental filing was deficient as counsel "could only muster five paragraphs- one a single sentence long." The supplemental memorandum was filed one day after the suppression hearing was concluded. The memorandum contains the succinct facts favorable to Appellant and testified to at the hearing, along with application of the *Chatton* case to the facts. We are aware of no mandate that memoranda of this nature conform to a certain length in order to be effective and moreover, the concise nature of the supplemental filing was more likely to be looked upon favorably by any court, given the evidence had already been heard. We also note that in co-counsel's closing argument, three times he agreed with arguments and fact pointed out by Appellant's counsel.

{¶47} "A properly licensed attorney is presumed to execute his duties in an ethical and competent manner." *State v. Taylor,* 4th Dist. No. 07CA1, 2008-Ohio-482, 2008 WL 343328, ¶ 10, citing *State v. Smith,* 17 Ohio St.3d 98, 100, 477 N.E.2d 1128 (1985). Therefore, a defendant bears the burden to show ineffectiveness by demonstrating that counsel's errors were so serious that he or she failed to function as the counsel guaranteed by the

Sixth Amendment.  *State v. Gondor,* 112 Ohio St.3d 377, 2006 Ohio-6679, 860 N.E.2d 77, ¶ 62; *State v. Hamblin,* 37 Ohio St.3d 153, 524 N.E.2d 476 (1988).

**{¶48}** In this matter, the trial court made its decision based on all the evidence before it. Appellant has not shown that his counsel's brief, supplemental filing, or conduct was deficient, nor has he overcome the presumption that his counsel's trial strategy was sound.  Based on review of the record, we find Appellant was not rendered ineffective assistance.   As such, we overrule the second assignment of error.

## ASSIGNMENT OF ERROR THREE

**{¶49}** Appellant contends the trial court committed plain error in sentencing him on three separate charges of similar import, trafficking, R.C. 2925.03(A)(2)/(C), possession, R.C. 2925.11(A)/(C),  and tampering with evidence, R.C. 2921.12(A)(1), when he could be found guilty of only one offense and sentenced on only one offense. Appellant argues his convictions arose from one transaction on one date and time under one case number. He requests this Court to order resentencing in this matter.

## A.  STANDARD OF REVIEW

**{¶50}**  For a reviewing court to find plain error: 1.) there must

be an error, i.e., "a deviation from a legal rule", 2.) the error must be plain,

i.e. "an 'obvious' defect in the trial court proceedings"; and 3.) the error

must have affected "substantial rights," i.e., it must have affected the

outcome of the proceedings. *State v. Barnes,* 94 Ohio St.3d 21, 27, 759

N.E.2d 1240 (2002); *State v. Williams,* 4th Dist. No. 11CA3408, 2012-Ohio-

4693, 2012 WL 4789848, ¶ 19.  Furthermore, the Supreme Court of Ohio

has admonished courts that notice of plain error under Crim.R. 52(B) is to be

taken "'with the utmost caution, under exceptional circumstances and only

to prevent a manifest miscarriage of justice.'" *Id*., quoting *State v. Long,* 53

Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus;

*Williams,* ¶ 19.

{¶51}  When determining whether multiple offenses should have

merged under R.C. 2941.25, "[o]ur standard of review is de novo." (Internal

citations omitted).  *Williams,* supra at ¶ 82.

## B.  LEGAL ANALYSIS

{¶52}  R.C. 2941.25, the multi-count statute provides:

(A)  Where the same conduct by defendant can be construed to
constitute two or more allied offenses of similar import, the
indictment or information may contain counts for all such offenses,
but the defendant may be convicted of only one.

(B)  Where the defendant's conduct constitutes two or more offenses
of dissimilar import, or where his conduct results in two or more
offenses of the same or similar kind committed separately or with a

separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

As the Supreme Court explained in *State v. Johnson,* 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, under R.C. 2941.25, "the court must determine prior to sentencing whether the offenses were committed by the same conduct." *Johnson* at ¶ 47. *Williams*, ¶ 83. The initial question is whether it is possible to commit the two offenses with the same conduct. *Johnson* at ¶ 48; *Williams* at ¶ 83. If so, we must then look to the facts of the case and determine whether the two offenses actually were committed by the same conduct, "i.e., 'a single act, committed with a single state of mind.'" *Johnson* at ¶ 49, quoting *State v. Brown*, 119 Ohio St.3d 447, 2008-Ohio-4569, 895 N.E.2d 149, at ¶ 50; *Williams,* at¶ 83. "If the answer to both questions is yes, then the offenses are allied offenses of similar import and will be merged." *Johnson* at  ¶ 50; *Williams,* at ¶ 83.

{¶53}  "Conversely, if the court determines that the commission of one offense will never result in the commission of the other, or if the offenses are committed separately, or if the defendant has separate animus for each offense, then, according to R.C. 2941.25(B), the offenses will not merge." *Johnson* at ¶51; *Williams* at  ¶ 84.

**{¶54}** The Supreme Court of Ohio has held that the simultaneous possession of different types of controlled substances can constitute multiple offenses under R.C.2925.11. *State v. Delfino*, 22 Ohio St.3d 270, 490 N.E.2d 884 (1986), at syllabus; *State v. Westbrook,* 4th Dist. No. 09CA3277, 2010-Ohio-2692, 2010 WL 2354018, at ¶ 42. R.C. 2925.11(A) states: "No person shall knowingly obtain, possess, or use a controlled substance." A controlled substance is defined as any substance listed in Schedules I through V under R.C. 3719.41 and as amended by R.C.3719.43 and .C. 3719.44. See R.C. 2925.01(A) and R.C. 3719.01(C); *Westbrook* at ¶ 42. Depending on the type of controlled substance involved, R.C. 2925.11(C) provides the title of and penalty for the offense. The legislature clearly intended that possession of different drug groups constitutes different offenses. *Delfino* at 274, 490 N.E.2d 884; *Westbrook* at ¶ 43.

**{¶55}** In this case, Appellant was sentenced on count one, trafficking in drugs, Oxycodone, a violation of R.C. 2925.03(A)(2)(C)(1)(e) and count four, possession of drugs, Oxymorphone, a violation of R.C. 2925.11(A)(1)(C)(1). [2] Oxycodone is listed under R.C. 3719.41(A)(1)(n), and is a Schedule II drug. Oxymorphone is also a Schedule II drug, listed under R.C. 3719.41(A)(1)(o). Under R.C. 2925.03(A)(2) (C)(1)(e), person

---

[2] We note the complete Revised Code sections are contained in the indictment, not in the judgment entry of sentence. The entry also lists Count 4, Possession of Drugs, as a felony of the third degree. Appellee's brief appropriately references the conviction as a felony of the second degree.

who traffics a controlled substance if the amount of the drug involved equals or exceeds fifth times the bulk amount but is less than one hundred times the bulk amount is guilty of "aggravated trafficking in drugs." Oxycodone is a Schedule II controlled substance. R.C. 3719.41 Schedule II(A)(1)(n).  Appellant committed a first degree felony under R.C. 2925.03(A)(2)(C)(1)(e) because the amount of Oxycodone confiscated was equal or exceeded fifty times the bulk amount but was less than one hundred times the bulk amount. There are cases in which merging allied offenses for sentencing may be appropriate, where a person convicted of trafficking in a controlled substances also effectively possesses, and is convicted, of that same controlled substance. *State v. Lewis,* 4th Dist. No. 08CA3226, 2008-Ohio- 6691, 2008 WL 5266102(case remanded  for consideration of whether possession and trafficking in crack cocaine were committed separately or with a separate animus); *State v. Westbrook,* 4th Dist. No. 09CA3277, 2010 Ohio – 2692, 2010 WL 2354018 (sentences for possessing and trafficking oxycodone vacated and remanded for new sentencing under either R.C. 2925.03(A)(2) or R.C. 2925.11(A).).

{¶56}  Under  R.C. 2925.11(A)(C)(1)(c), a person who possesses a controlled substance if the amount of the drug involved equals or exceeds five times the bulk amount but is less than fifty times the bulk amount is

guilty of "aggravated possession of drugs." Oxymorphone is also a Schedule

II controlled substance. R.C. 3719.41, Schedule II, (A)(1)(o). Appellant

committed a felony of the second degree under R.C. 2925.11(A)(C)(1)(c)

because the amount of Oxymorphone he possessed equaled or exceeded five

times the bulk amount but less than fifty times the bulk amount. R.C.

2925.03(A)(2)(C)(1)(e) and R.C. 2925.11(A)(C)(1)(c) each required proof of

different facts, i.e., here, the different drugs and different amounts, to

establish violations of the Revised Code. Therefore, they are not allied

offenses of similar import. The legislature clearly intended that possession

of different drug groups constitutes different offenses. *Delfino* at 274, 490

N.E.2d 884; *Westbrook,* at ¶ 43. Here, the facts show that not only are there

different drugs involved, but also different bulk amounts. Merger as allied

offenses is simply not correct in this matter.

{¶57} Finally, tampering with evidence, R.C. 2921.12, provides as

follows:

> (A) No person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall do any of the following:
>
> (1) Alter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation;
>
> (2) Make, present, or use any record, document, or thing, knowing it to be false and with purpose to mislead a public official who is or may

be engaged in such proceeding or investigation, or with purpose to corrupt the outcome of any such proceeding or investigation.

(B) Whoever violates this section is guilty of tampering with evidence, a felony of the third degree.

The offense of tampering with evidence is not allied to either of the above-discussed offenses.

{¶58} Appellee has pointed out in its brief, the sentence was an agreed sentence, pursuant to R.C. 2953.08(D)(1). R.C. 2953.08(D)(1) provides:

"A sentence imposed upon a defendant is not subject to review under this section if the sentence is authorized by law, has been recommended jointly by the defendant and the prosecution in the case, and is imposed by a sentencing judge."

{¶59} Inasmuch as we have determined Appellant's sentence was authorized by law, we also note it was an agreed sentence. The transcript and the judgment entry of sentence reflect this. We find no error, let alone plain error, in the trial court's sentencing of Appellant.

CONCLUSION

{¶60} Based on the record of the trial court proceedings, we find no merit to Appellant's three assignments of error. We therefore affirm the judgment of the trial court.

**JUDGMENT AFFIRMED.**

Kline, J., dissenting.

{¶61} I respectfully dissent because I find that the record is ambiguous, confusing, and not certain in itself regarding whether the defendant pled guilty or no contest. As a result, I would remand for clarification of the record under App.R. 9(E).

# **JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE AFFIRMED and that the Appellee recover of Appellant costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Scioto County Common Pleas Court to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Exceptions.

Abele, J.: Concurs in Judgment and Opinion.
Kline, J.: Dissents with Opinion.

For the Court,

BY:  _____
Matthew W. McFarland
Presiding Judge

## **NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**